292 S.W.2d 738 (1956)
James I. HUFFMAN
v.
STATE of Tennessee.
Supreme Court of Tennessee.
June 8, 1956.
Petition to Rehear Overruled July 20, 1956.
*739 Joe D. Duncan, Knoxville, for plaintiff in error.
Nat Tipton, Advocate General, Nashville, for the State.
BURNETT, Justice.
Huffman and two other people were indicted by three separate indictments charging them with assault and battery with intent to maim. His two co-defendants were acquitted. The three parties were tried together under the three separate indictments. Huffman was convicted in each and his punishment fixed at a jail sentence of 11 months and 29 days and a $500 fine under each of the indictments. The trial court directed that the jail sentences run concurrently and that two of the $500 fines be suspended, thereby leaving in effect only one fine. The plaintiff in error has seasonably appealed, filed his assignments and brief and we have heard argument here. The case now comes on for our disposition.
This is one of those cases occurring during the telephone strike in the early part of 1955. On April 15, of that year, the prosecutor R.H. Ford was a non-striking employee at Morristown. About 10:00 in the evening he had finished his duty and he in company with two other people went to where their car was parked for the purpose of going home. The proof shows that the plaintiff in error was engaged in walking the picket line in front of the telephone building. Upon seeing the prosecutor leaving the telephone building on his way home, the plaintiff in error left this picket line and got in his automobile with three women who were seated therein. *740 The plaintiff in error immediately turned his automobile around and proceeded to chase the car that Ford was driving. The record shows that Huffman's car had some placards which were being displayed calling the prosecutor and his passengers scabs and that a spotlight from Huffman's car was continuously flashed on the car of Ford.
When Ford's car had proceeded some three or four blocks it was violently rammed from the rear by the car driven by Huffman and minor injuries were inflicted upon the occupants of the Ford car. Ford at the time seems to have been slowing down for a traffic light.
Huffman and his lady companions all testified that the prosecutor's car came to a stop, that he went into reverse gear and backed into them and that this caused the collision.
There are nine assignments of error which should be grouped into three general groupings. The first of these groupings is that the evidence preponderates against the verdict and two that the trial court erred in entering a judgment on more than one indictment and third that the verdict is void.
Under the evidence as submitted to the jury we think that the jury was well warranted in looking to the conduct of Huffman prior to the accident and leading up to the accident in determining the question. Ford, the prosecutor, seemed to have been going about his business and on his way home in a very peaceful manner, taking his two passengers to the neighborhood where they lived. When he left the telephone building Huffman and his companions got into the car and gave pursuit. Quite obviously Huffman and his companions' excuse was that they merely wanted to see who was in this car. Obviously the jury did not believe them but credited the prosecutor and his companions who were the witnesses for the State. The jury was well warranted in this belief under this record. Huffman denied using his spotlight and that he was throwing it on Ford's car. This is testified to by a disinterested witness and obviously it presents purely a question of fact for the jury. The next contention of Huffman is that Ford stopped his car and went into reverse gear in an attempt to back up and ram Huffman's car. This seems to us to be very unreasonable. Clearly the jury were within their rights in discrediting these statements of the plaintiff in error and his witnesses. These fact questions clearly were questions for the trial jury to determine. This body determines whether or not the State's witnesses were testifying truthfully or whether or not the plaintiff in error's witnesses were doing so. The jury accepted the testimony of the State's witnesses and we clearly think that there is ample proof and the logic of the testimony warrants this deduction by the jury. So it is that we are clearly of the opinion that the evidence does not preponderate against the verdict.
The State concedes that the three verdicts cannot stand because a defendant would be guilty of only one crime where he injures three or more persons as a result of one guilty stroke. Smith v. State, 159 Tenn. 674, 21 S.W.2d 400. This case is directly in point and thus under the authority of this case and on recommendation of the Advocate General the judgments of conviction in the indictment charging the assault upon the two guests of Ford's car must be reversed and these indictments dismissed.
The indictments charge that the plaintiff in error and his companions on a certain date "did unlawfully, wilfully, maliciously and feloniously make an assault upon R.H. Ford, with an automobile, in that said James I. Huffman, Sue Stapleton and Margaret Sawyer, being engaged in a joint venture, drove an automobile into and against a vehicle occupied by R.H. Ford, with wilful, malicious and felonious intent to maim and injure said R.H. Ford, *741 against the peace and dignity of the State of Tennessee." This indictment merely charges an assault and battery. Haslip v. State, 1817, 5 Tenn. 273. The Advocate General concedes:
"The indictment against plaintiff in error evidently was undertaken to be drawn under Code Section 10801 (39-603 T.C.A.) but since it fails to aver a felony sought to be committed, its validity is doubtful. Definitely under it, there could hardly be a conviction for assault with intent to commit voluntary manslaughter and if nothing else existed, the verdict would probably be a nullity."
The conviction and finding of the jury was that the plaintiff in error was guilty of an assault with intent to commit voluntary manslaughter. The trial judge in charging the jury assumed that the indictment was drawn under and based on T.C.A. § 39-604, § 10797, Williams' Code. In other words the trial judge read to the jury this Code Section T.C.A. § 39-604, which is the section where one is charged with an assault in an attempt to commit murder may be imprisoned in the penitentiary for not less than 3 nor more than 21 years. The trial judge then under T.C.A. § 40-2518 proceeded to instruct the jury as to all the law of each grade of the offense which he thought was charged in this indictment under T.C.A. § 39-604. It was under this charge of the offense of an assault with the intent to commit voluntary manslaughter that the jury found the plaintiff in error guilty.
The Advocate General argues that the crime which the plaintiff in error is charged with committing in the indictment is embraced within a conviction for assault and battery with the intent to commit voluntary manslaughter and that under the authority of Forsha v. State, 183 Tenn. 604, 194 S.W.2d 463, "this Court may treat the verdict as being absolutely valid so far as it convicts the plaintiff in error of the offense of assault and battery. The punishment in the instant case, upon application of the plaintiff in error was fixed by the trial jury and lies within that allowed in cases of conviction for assault and battery." It is then said that we may sustain the conviction here under the Forsha case which merely follows Corlew v. State, 181 Tenn. 220, 180 S.W.2d 900, in which the spade work was done by this Court to applying such a rule, that is, when the proof shows the party guilty of a lesser offense from that which he has been convicted, which is included in the greater, then this Court should sustain the conviction of the lesser offense and at the same time fix the minimum penalty under the lesser offense.
We have discussed this matter at length pro and con in conference and have made a rather extensive independent investigation on the question because under the facts as here adduced we think the man clearly guilty of an offense greater than that charged in the indictment. One though cannot be convicted of more than he is charged in the indictment then it is reversible error for the jury to find one guilty of or one of the lesser degrees of the crime charged in the indictment then it is reversible error for the jury to find one guilty of an assault with intent to commit voluntary manslaughter where the indictment does not charge the greater crime under which that could be included, that is, an assault with intent to commit murder in the first or second degree. Bass v. State, 65 Tenn. 579. One indicted cannot be called upon to defend an indictment for more than is charged in the indictment.
The Court in the Corlew case, in the majority opinion, made several observations which are applicable here. We quote a number of these which obviously apply to the argument of the Advocate General that this sentence should be affirmed and the degree of the crime reduced to assault and battery rather than an assault with the intent to commit voluntary manslaughter. *742 In Corlew v. State, supra [181 Tenn. 220, 180 S.W.2d 901], the Court among other things reasoned that if the judgment therein was reduced to the minimum for which the man was clearly guilty under the facts that it would not violate "any beneficial right to the defendant secured to him by the Constitution, or the statute." The Court said:
"The ends of justice are met, and no right of the defendant invaded, by the judgment of this Court fixing the punishment at one year only, the lowest term authorized by the statute. Certainly, of this procedure and judgment the defendant cannot be heard to complain. * * *"
And again the Court said:
"We fully agree that the rule should never be applied unless it is plain, beyond question, that the action taken is for the benefit of the defendant-plaintiff in error. Thus only can his rights be fully preserved. But, it is too plain for dispute that a judgment in this case, reducing the conviction from grand to petit larceny, and the maximum term of imprisonment from three to one year, is to the advantage of the defendant."
And again the Court said:
"Therefore, if the case is sent back and this matter left to the jury, no less than one year could be fixed. The result, therefore, could not be more favorable to the defendant if fixed by a jury. Since this is so, the defendant could obtain no advantage from having a jury fix his term and no wrong will have been done him by the judgment of this Court fixing his imprisonment at the statutory minimum of one year. The reason for action by a jury, therefore, fails and this statutory provision may be disregarded."
Under the indictment here as we have said and as agreed to by the Advocate General the man is only charged with the commission of assault and battery. An assault is rather clearly defined in 6 C.J.S., Assault and Battery, § 60, at page 915, as:
"An assault may consist of any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person."
The elements of battery were correctly charged in the court's instruction to the jury. This fundamental element is thus defined in 6 C.J.S., Assault and Battery, at § 70, supra:
"A touching of the person of the prosecutor, or something intimately associated with, or attached to, his person, for an unlawful purpose, is essential to the offense of battery."
Under this charge of an assault and battery the penalty for a violation for the commission of this crime is prescribed by T.C.A. § 39-105. The punishment is fixed at imprisonment in the county jail or workhouse for not more than one year or by a fine of not exceeding $1,000 dollars, or both in the discretion of the Court. Obviously then the penalty as fixed in the instant case by the jury and trial judge is the maximum as far as the time to be served is concerned with a fine or half of what could be fixed under the statute. If we were to affirm this sentence certainly we would not be within the spirit and holding of the Corlew or the Forsha cases, supra. The jury were charged on an offense much greater than that for which the man had been charged with in the indictment and thus under this charge the jury found the man guilty of a greater crime than he was charged with in the indictment. The matter will have to be modified and the case remanded for the purpose of having the jury fix his punishment within the maximum as charged in this indictment which is assault and battery. When the case is thus tried, that is, the one case wherein R.H. *743 Ford is the prosecutor, a fair judgment may be rendered. Other errors assigned herein are not discussed or considered because by what we have said these things will be cured in and of themselves by a new trialwe refer specifically to the questions raised with reference to the jury's return of the verdict in the three cases wherein they and the trial court obviously were confused. For the reasons stated above the judgment below is modified and the cause remanded for the purpose of fixing appropriate punishment under the indictment which merely charges assault and battery. The costs of the cause are taxed to the plaintiff in error. On remand the only question for the consideration of the jury will be the punishment to be fixed for assault and battery. Thus both sides may introduce proof as to how the assault was committed, the injuries, aggravation or mitigation, etc., so that the jury may properly fix the penalty. The trial judge should charge the jury that the plaintiff in error is guilty of assault and battery and that the fixing of the punishment is all they are to do.

On Petition To Rehear
We have been presented with a forceful, dignified and intelligent petition to rehear wherein the single question is presented that by our remand for the purpose of having the jury fix the punishment of the plaintiff in error we have violated his constitutional rights.
The argument presented by the petitioner in support of his contention is that he should be if found guilty by a jury have that same jury fix his punishment. A number of cases are cited in which the unquestioned proposition is set forth that a man is entitled to an impartial jury to try him on any indictment or presentment made against him. There are no cases cited though in which it is held that the punishment must be fixed by the same jury that finds the man guilty.
In 1948 this Court in the case of Robert E. Faucette v. State, Sullivan Criminal, not for publication, found that the evidence was clear that the man was guilty of involuntary manslaughter, when he had been convicted of a greater offense, and remanded the case to that court for the fixing of the punishment. The case went back to trial and the trial judge charged the second jury that it was merely their province to fix the punishment. This Court, in an opinion by the present Chief Justice, affirmed the holding of the trial court on the second trial in an opinion handed down February 10, 1950.
Section 9 of Article 1 of the Constitution of Tennessee, insofar as herein applicable, provides:
"That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel; * * * a speedy public trial, by an impartial jury of the County in which the crime shall have been committed, and shall not be compelled to give evidence against himself." Vol. 1, T.C.A. page 275.
No where in this constitutional provision is it provided that the same jury that finds the man guilty must fix the punishment.
The United States Constitution, Clause 3, Section 2 of Article 3, insofar as herein applicable, provides:
"The trial of all crimes, except in cases of impeachment, shall be by jury." Vol. 1, page 80, T.C.A.
There is nothing, so far as we can find, in the United States Constitution that provides or guarantees an accused that the same jury that finds him guilty shall fix his punishment.
Section 14 of Article 6 of the Constitution of Tennessee, insofar as here applicable, provides:
"No fine shall be laid on any citizen of this State that shall exceed fifty dollars, unless it shall be assessed *744 by a jury of his peers, who shall assess the fine at the time they find the fact, if they think the fine should be more than fifty dollars." (Emphasis ours.) Vol 1, page 657, T.C.A.
This is the only constitutional provision that we can find that has anything in the world to say about or do with a jury who finds a man guilty fixing his punishment. Clearly this provision of the Constitution merely applies to a fine in the monetary sense. It has no application to the fixing of the time that a man shall be incarcerated in prison, jail or workhouse for that particular crime. The substance of this constitutional provision was long ago enacted by the Legislature into the Code and then carried down to this day where it is found in Section 40-2525, T.C.A. The very fact that this provision ("assess the fine at the time they find the fact") is in Section 14, Article 6, above is, in itself, the best reason why it was not meant to be in Article 1, Section 9, (the right to trial by jury).
This Court in France v. State, 65 Tenn. 478, 485, in talking of the constitutional provision last above quoted said:
"The English bill of rights particularly declared that excessive fines ought not to be imposed which had a retrospect, according to Sir Wm. Blackstone, to some unprecedented proceedings in the Court of Kings' Bench, in the reign of King James II. The history of this important provision renders it plain that it was aimed at the abuse of the unlimited power of courts in respect to fines, and was not intended as a limitation upon the power of legislation. It is very plain, too, as we think, that the provision in our own Constitution that a fine exceeding fifty dollars cannot be imposed unless assessed by a jury refers to cases where the court has a discretion in fixing the amount of the fine."
We have frequently held under this provision of the Constitution and statutory enactment, Section 40-2525, T.C.A. that if the trial judge fixes the fine in excess of fifty dollars that it is our duty to reduce that amount and affirm a judgment for fifty dollars where there is no other reversible error. Shoun v. State, 111 Tenn. 166, 78 S.W. 91; Diamond v. State, 123 Tenn. 348, 131 S.W. 666. Section 27-326, T.C.A. provides in effect that we must, on appeal, render such a judgment or decree as the inferior court should have rendered.
Therefore it seems under this provision of the Constitution, Section 14, of Article 6, that when we have found from the record as tried that the man has had a fair trial before a jury and they have found him guilty of an offense then it is our duty to remand the case for a new trial with instructions to the trial judge in instructing the jury on the offense for which the man is guilty as shown in the original record that the maximum that they can fine him is fifty dollars instead of the sum as fixed in Section 39-105, T.C.A. of one thousand dollars. In other words the trial judge, will charge the jury that another jury found Huffman guilty of an assault and battery and the present jury has heard the proof pro and con as to how this assault and battery took place and that the case has been remanded for this jury to fix his punishment for the crime for which the man is found guilty, assault and battery, and the punishment shall be not more than one year in the penitenitary and by a fine of not to exceed fifty dollars. When the matter is thus treated clearly there can be no constitutional inhibition requiring the same jury to fix the punishment and fine that finds the man guilty.
In this case as is shown from our original opinion and from this opinion on the petition to rehear every step taken in the case from the return of the indictment until it was finally heard and disposed of by this Court that the defendant's right to a fair and impartial trial, as guaranteed by the Constitution and the laws of Tennesnee, have been strictly observed. In this *745 remand for fixing the punishment the trial will be upon the facts and Huffman will be permitted to prove every fact and circumstance in mitigation of the crime.
The defendant is thus guaranteed the right to have "a jury of his peers" fix his punishment, and this was a benefit upon which no assignment of error could be made.
We have carefully considered this matter and for the reasons expressed in the original opinion and in this opinion remand the case to the trial court for the purpose of having the jury fix the punishment with the right as expressed in the original opinion to have all the evidence introduced as to how the assault happened for the purpose of allowing the defendant to mitigate the effect of the crime as much as he can. The petition to rehear is for these reasons overruled.