Edward WARD, Petitioner,

v.

Murray C. HENDERSON, Warden, Louisiana State Penitentiary, and State of Louisiana, Respondents.

Civ. A. No. 15474.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Sept. 14, 1970.

Richard V. Burns, Gravel & Burns, Alexandria, La., for petitioner.

Ronald C. Martin, Dist. Atty., Tenth Judicial District, Natchitoches, La., Jack P. F. Gremillion, Atty. Gen. of Louisiana, Baton Rouge, La., for respondents.

## RULING

DAWKINS, Chief Judge.

Petitioner, Edward Ward, is presently confined at the Louisiana State Penitentiary at Angola, Louisiana, under the threat of a death sentence imposed on April 29, 1963 in the Tenth Judicial District Court in the Parish of Natchitoches, Louisiana. Ward, along with three co-defendants, was jointly indicted for murder and after a joint trial he was found guilty and sentenced to death.

In the present habeas corpus proceeding,[1] petitioner contends (1) that he was denied the right of confrontation by the admission into evidence, during the forced joint trial, of the written confession of a co-defendant who did not testify and was not therefore subject to cross examination and (2) that the manner of selecting the petit jury was infirm because of the exclusion of prospective jurors who expressed conscientious or religious scruples against imposition of capital punishment.

## RIGHT OF CONFRONTATION

■ The United States Supreme Court has held that the right to cross examine is included in the right of an accused to confront witnesses against him which is secured by the Sixth Amendment and is binding upon the States.[2] In Bruton v. United States,[3] where the confession of a co-defendant who did not take the stand was used against petitioner Bruton, the Court held:

"* * * that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of * * * [the] confession in this joint trial violated petitioner's right of cross-examination secured by the confrontation Clause of the Sixth Amendment."[4]

The Supreme Court has given retroactive application to the holding of Bruton.[5]

In the present case the written confession of codefendant William Chevalier which incriminated Ward was admitted into evidence, over objection, affording petitioner no opportunity to cross-examine. This is a clear violation of Bruton.

Violation of Bruton does not require automatic reversal. In Harrington v. California,[6] the Supreme Court specifically addressed itself, in a Bruton-type situation, to the question of "harmless error." The Court held that the constitutional error is harmless if the reviewing court is able to declare a belief that it is harmless beyond a reasonable doubt. The Harrington test requires that the untainted evidence against the petitioner be "* * * so overwhelming that we conclude that this violation

1. Petitioner has exhausted his State remedies. He applied for habeas corpus relief to the Tenth Judicial District Court in Natchitoches and the Louisiana Supreme Court, both of which denied relief. The Louisiana Supreme Court's ruling of September 24, 1969, simply noted: "Writ refused. The showing made does not warrant the exercise of our original, or supervisory jurisdiction."

2. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

3. 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

4. Id. at 126, 88 S.Ct. at 1622.

5. Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). The Court here also expressly applied Bruton to State proceedings.

6. 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

of *Bruton* be harmless beyond a reasonable doubt * * *." [7]

In *Harrington* each of petitioner's three co-defendants confessed and their confessions were introduced at the trial with limiting instructions that the jury was to consider each confession only against the confessor. Only one co-defendant took the stand and was subject to cross examination. Significantly, in light of the instant case, Harrington did not confess to the crime but merely made statements that placed him at the scene of the crime. Moreover, there was conflicting testimony between that of prosecution witnesses and the extrajudicial confessions with respect to Harrington's participation in the crime. The Court held that "[t]he case against Harrington was not woven from circumstantial evidence. It is so overwhelming that unless we say that no violation of *Bruton* can constitute harmless error, we must leave this state conviction undisturbed." [8]

After careful review of the extensive trial record, we find that the facts of the present case present an even stronger case for finding that the *Bruton* error was harmless than did *Harrington*. Unlike *Harrington,* there was no conflicting testimony regarding the participation of Ward in the murder. All properly admitted testimony relative to the actual commission of the crime indicated that petitioner fired the shots. Two of petitioner's three co-defendants testified that Ward fired the shots which resulted in the death. Police officers testified that Ward made extrajudicial admissions of guilt. These co-defendants as well as the other witnesses, of course, were subject to cross examination. Finally, Ward, while testifying in his own behalf admitted that he fired the fatal shots.

Chevalier's confession was cumulative with respect to the evidence incriminating Ward introduced at the trial by the other two co-defendants, the testifying police officers, and petitioner himself. It supplied no other assertions of fact with respect to Ward's participation in the crime. While "[w]e do not suggest that, if evidence bearing on all the ingredients of the crime is tendered, the use of cumulative evidence, though tainted, is harmless error," [9] the case against Ward was so overwhelming that we conclude that the violation of *Bruton* was harmless beyond a reasonable doubt.[10]

## JURY SELECTION

At the time of petitioner's trial, Louisiana Revised Statute 15:352 provided in part: [11]

"It is good cause for challenge on the part of the prosecution but not on the part of the defense,

* * * * * *

(2) That the juror tendered in a capital case has conscientious scruples against the infliction of capital punishment."

---

7. *Id.* at 254, 89 S.Ct. at 1728.

8. *Id.*

9. *Id.* We think the facts of the present case would even satisfy the more stringent test announced by the dissent in *Harrington* and in the prior case of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Even, as we did, focusing on the "character and quality of the tainted evidence as it relates to the untainted evidence and not just on the amount of untainted evidence" (*Harrington, supra,* 395 U.S. at 256, 89 S.Ct. 1726, 1729), we conclude that the error is harmless beyond a reasonable doubt. To hold otherwise under these facts would require automatic reversal which neither *Chapman* nor the dissent in *Harrington* urge.

10. *See,* Baker v. Wainwright, 422 F.2d 145 (5th Cir. 1970); United States v. Mobley, 421 F.2d 345 (5th Cir. 1970); United States v. Montos, 421 F.2d 215 (5th Cir. 1970); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969); Posey v. United States, 416 F.2d 545 (5th Cir. 1969); James v. United States, 416 F.2d 467 (5th Cir. 1969).

11. Replaced by La.Code Crim.P. art. 798 and subsequently amended to conform with *Witherspoon, infra.*

The United States Supreme Court in Witherspoon v. Illinois,[12] unequivocally stated:

"Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction."

The Court also held that *Witherspoon* was to be given retroactive application.[13]

That the selection of jurors in this case violated *Witherspoon* is quickly evident from review of the record of the voir dire examination.[14] No less than seventeen prospective jurors were challenged for cause because they expressed general conscientious or religious scruples against infliction of capital punishment. Under *Witherspoon,* the death penalty cannot be imposed.

While the United States Supreme Court was explicit in its holding that the death penalty could not be imposed, it did not specify the manner of disposing of the cases which would arise under the *Witherspoon* holding. The Court emphasized that its decision did not affect the determination of guilt but solely the sentence.

"Nor, finally, does today's holding render invalid the *conviction,* as opposed to to the *sentence,* in this or any other case." [15]

The question that the Supreme Court left unanswered is what disposition should be made where a petitioner's conviction is valid but the sentence is invalid? Subsequent to *Witherspoon* the Supreme Court indicated

"* * * in the event it turns out * * * that relief from the death sentence must be ordered, a local federal court will be far better equipped than are we to frame an appropriate decree with due regard to available * * * [state] procedures." [16]

While the Louisiana Supreme Court has not yet addressed itself to the question, we feel that Louisiana law presently does not have an available procedure by which, on remand from this Court, a State District Court can reduce the sentence in a capital case. Article 882 of

12. 391 U.S. 510, 522, 88 S.Ct. 1770, 1776–1777, 20 L.Ed.2d 776 (1968).

13. *Id.* at 523, n. 22, 88 S.Ct. at 1777.

14. Typical exchanges on voir dire include: "Q: * * * Mr. Allen, this is a case by the State of Louisiana and against Edward Ward, Charles Cage, Earl Edward Davis and William Anthony Chevalier. They are charged with the crime of the murder of John Fisher on November the 11th, 1962, here in the City and Parish of Natchitoches. This crime can be punished by death, and I would like to ask if you have any conscientious objection or scruples, either moral or religious, against capital punishment?
A: Yes, sir.
Q: You do have?
MR. ANDERSON: Your honor, at this time we challenge this juror.
THE COURT: Mr. Allen, you are excused. You may go."
[Petitioner's Ex. 2, p. 23.]
"Q: Mr. Pullig, this is a case of State of Louisiana against Edward Ward, Charles Cage, Earl Davis and William Chevalier. They are charged with the crime of the murder of John Fisher on November 11th, 1962, here in the City and Parish of Natchitoches. Because this crime can be punished by death, I will ask you if you have any conscientious objections or scruples against capital punishment.
A: Due to my religious belief. I have to object.
Q: You conscientiously object to capital punishment on religious conviction?
A: That's right.
MR. ANDERSON: The State challenges this juror."
[Petitioner's Ex. 2, p. 26.]

15. *Witherspoon, supra,* 391 U.S. at 521–523, n. 20, 88 S.Ct. at 1777.

16. Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); *see* also, Maxwell v. Bishop, 398 U.S. 262, 266, 90 S.Ct. 1578, 26 L.Ed.2d 221. (Prelim.Print 1970).

**348**

the Louisiana Code of Criminal Procedure provides in part:

"An illegal sentence may be corrected at any time by the *court that imposed the sentence.*" (Emphasis added.)

Under the existing Louisiana scheme of criminal procedure the jury, not the Court, determines the sentence in a capital case and their determination is mandatory on the Court.[17] It is questionable whether the State District Court has jurisdiction to reduce a death sentence to life imprisonment.

■ While it would be desirable in the interest of federal-state comity to look to state procedures and practices to correct the illegal sentence imposed here, the petitioner should not remain under an illegal sentence because the state provides no clear-cut procedures to correct its constitutional error. Especially is this so in light of the state's prior failure to remedy its error here. Nor do we feel that a new trial should be granted with its concomitant difficulties when *Witherspoon* emphatically states that the question of guilt is not affected.

This Court is given some indication of how the Louisiana Supreme Court would handle matters such as this. That Court in two cases[18] *on appeal* granted new trials. It appears that the reason that a new trial rather than a corrected sentence was chosen was because the Court felt it did not have jurisdiction to impose a corrected sentence in a capital case on appeal. The Court indicated however that the results would be different if a case came up other than on appeal.

"* * * that portion of our decree which reversed the conviction and remanded for a new trial is not intended to, nor does it, apply to those cases where the conviction and sentence have become final after appellate review or by elapse of time for appeal."[19]

■ This Court has jurisdiction under 28 U.S.C. § 2241 to grant a writ of habeas corpus where a petitioner is held in custody "in violation of the Constitution * * * of the United States." We are further authorized to dispose of habeas corpus matters "as the law and justice require."[20] While previously habeas corpus would not lie where physical release would not result immediately, the United States Supreme Court has rejected that approach as unnecessarily doctrinaire.

"Thus, to the extent that *McNally* relied on the notion that immediate physical release was the only remedy under the federal writ of habeas corpus, it finds no support in the statute and has been rejected by this Court * * *."[21]

■ In the present case, of course, immediate physical release would not necessarily result even though petitioner's Constitutional rights under *Witherspoon* are vindicated. This does not, however, as it should not, prevent this Court from granting petitioner the relief he is due. Constitutional error cannot remain uncured because of the vagaries or unavailability of appropriate State procedures.

■ In light of *Witherspoon*, the State of Louisiana, its officials, officers, and agents no longer have jurisdiction or authority to execute petitioner, Edward Ward, on the basis of the sentence imposed on April 29, 1963, and all are hereby enjoined from so doing. We further strongly urge that the rationale of *Witherspoon* requires that petitioner be held in custody under no more onerous conditions than had he been sentenced to life imprisonment at the original trial; *i. e.,* he may no longer be confined on Death Row at the Louisiana State Penitentiary. It is so ordered.

---

17. *Cf.* La.Code Crim.P. arts. 557, 780.

18. State v. Turner, 253 La. 763, 220 So.2d 67 (1969); State v. Benjamin, 254 La. 49, 222 So.2d 853. See also, *Note* 30 La.L.Rev. 502 (1970).

19. State v. Turner, 253 La. 763, 767, 220 So.2d 67, 69 (1969).

20. 28 U.S.C. § 2243.

21. Peyton v. Rowe, 391 U.S. 54, 67, 88 S.Ct. 1549, 1556, 20 L.Ed.2d 426 (1968).