Philip J. CARDINALE, Jr.

v.

C. Murray HENDERSON, Warden Louisiana State Penitentiary.

Misc. No. 1116.

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

Sept. 16, 1970.

Nathan Greenberg, Gretna, La., for petitioner.

Jack P. F. Gremillion, Atty. Gen., State of La., Jack E. Yelverton, Asst. Atty. Gen., Baton Rouge, La., for respondent.

WEST, Chief Judge:

Petitioner, Philip J. Cardinale, Jr., is presently incarcerated in the state penitentiary at Angola, Louisiana, awaiting

the execution of a death sentence which was imposed after he was indicted, tried, and found guilty as charged of the crime of murder. On appeal to the Supreme Court of the State of Louisiana the petitioner's conviction was affirmed. 206 So.2d 510. His application for a writ of certiorari to the United States Supreme Court was subsequently dismissed. 394 U.S. 437, 89 S.Ct. 1161, 22 L.Ed.2d 398. A writ of habeas corpus was applied for in the Twenty-Fifth Judicial District Court of the State of Louisiana and denied, and finally, on May 25, 1970, the Louisiana Supreme Court also refused a writ of habeas corpus. 235 So.2d 98. Having thus exhausted available state court remedies, the petitioner now seeks a writ of habeas corpus from this Court upon the claim that his conviction violated his Fifth, Sixth, and Fourteenth Amendment rights as interpreted in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). He further contends that the introduction of the part of his confession which contained a reference to a prior crime was in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

Specifically the petitioner alleges that he was found guilty and sentenced for the crime of murder by a jury from whose membership fifteen prospective jurors who evidenced conscientious scruples against the infliction of capital punishment were excluded. And he contends that because of the removal of these fifteen prospective jurors, a new trial is required.

█ Leaving open for the moment the question of whether a new trial is the appropriate remedy, it is clear that if the petitioner's allegations are found to be correct that the rule of *Witherspoon* would require appropriate relief. The Supreme Court in Witherspoon v. Illinois, 391 U.S. 510, 521–523, 88 S.Ct. 1770, 1776–1777, 20 L.Ed.2d 776 (1968) held that:

"* * * a State may not entrust the determination of whether a man

should live or die to a tribunal organized to return a verdict of death. Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen ·by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected."

And this decision is fully retroactive. See *Witherspoon*, 391 U.S. 510, 523, 88 S.Ct. 1770, 1778–1779 n. 22, 20 L.Ed.2d 776 (1968).

█ However, the state may still challenge and exclude for cause those veniremen who make it clear (1) that they would automatically vote against the death penalty regardless of what the evidence showed, or (2) that, because of their attitude toward the death penalty, they could not make a determination of guilt with impartiality.

█ Although it is not completely clear as to each of the fifteen jurors now challenged by petitioner, it is very clear from the record that several of those prospective jurors who were excluded in this case were summarily excused merely because they expressed a general objection to the death penalty or merely expressed conscientious scruples against it. For example, typical of the voir dire examination of several of those prospective jurors on the question of capital punishment is the examination of one James Perkins found on page 52 of Book 8 of the transcript. It went like this:

"Q. Now, you heard me ask questions of the men who came before you concerning capital punishment?

"A. Yea, I heard that question.

"Q. Do you believe in capital punishment?

"A. No, I don't believe in capital punishment.

"Q. You do not?

"A. No, Sir.

"Q. Is your attitude strong and conscientious?

"A. You mean—

"Q. Are you sincere about it?

"A. Am I sincere about it? Yes.

"Q. You do not believe in administering capital punishment?

"A. No, Sir.

"Q. You're excused."

*Witherspoon* held specifically that a "sentence of death cannot be carried out if the jury that imposed it or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 88 S.Ct. at 1777. It is the finding of this Court, after a careful review of the transcript of the voir dire examination, that several prospective jurors were excluded in violation of the teaching of *Witherspoon,* and that therefore federal habeas corpus relief is appropriate. But the granting of habeas corpus relief does not necessarily require that petitioner's conviction be set aside.

Witherspoon v. Illinois, 391 U.S. 510, 522–523, 88 S.Ct. 1770, 1777 n. 21, 20 L. Ed.2d 776 (1968) is quite specific about the proper relief to be granted. The *conviction* is still valid. In fact, the validity of any *sentence,* other than a capital sentence, is not affected. See Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Therefore, a new trial is generally not the appropriate remedy. If, in a particular case, it can be shown that the exclusion of jurors left a jury which was prejudiced on the issue of guilt, *Witherspoon* would not prevent a retrial. However, *Witherspoon* is not authority *for* such a proposition, and no such showing has been made or alleged in this case.

Since the petitioner also claims that the introduction of the part of his confession which contained a reference to a prior conviction was also a violation of the due process clause of the Fourteenth Amendment to the United States Constitution, this contention must be considered before the proper relief can be determined.

The confession included statements by the petitioner: (1) that he had been convicted several months before of a crime involving a girl, (2) that he was sentenced to 90 days imprisonment in the parish jail, and (3) that upon being released from jail he had secured a gun and had spent three or four nights looking for the girl to kill her. The defendant objected to this testimony, but the trial judge overruled the objection and the entire confession was introduced into evidence in reliance on La.R.S. 15:450 (1950).

La.R.S. 15:450 (1950) states that:

"Every confession, admission or declaration sought to be used against anyone must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford."

The difficulty with applying La.R.S. 15:450 (1950) is that it presupposes a factual situation which would be to the benefit of an accused. In this case, the part of the confession objected to is not exculpatory.

The question posed by the petition here is whether the use of such a statement in its entirety is a violation of due process, requiring a new trial. It would, of course, be preferable if the State could always prove their case with the use of direct evidence which related only to the particular crime being charged. But proving cause and effect would often be a hopeless task without relating a sequence of events. And to require that this sequence of events must always be related only to the crime being charged would be an impossible burden to place on the State. Evidence should be weighed for its probative value as well as its prejudicial effect.

But La.R.S. 15:450 (1950) is concerned with the prejudicial effect of a confession, admission or declaration, and is couched in terms indicating that the

entire statement is to be admitted *for the benefit* of the defendant. From the language of the statute, it is difficult to see how this can serve as the basis for introducing a previous offense, although a previous offense by the petitioner might add to the probability that he committed a subsequent offense.

It should be noted however that La.R. S. 15:445 and La.R.S. 15:446 (1950) would allow the introduction of the prior conviction and the subsequent search for the girl for the avowed purpose of killing her, to show intent under La.R.S. 14:30 (1950). The introduction of such material is not contrary to due process if such evidence is pertinent to the crime charged and admissible for other valid purposes, such as to prove method, knowledge, or intent. See Spencer v. State of Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

Having found that there was no breach of due process by the introduction of the entire confession including the reference to a prior crime, it is therefore now necessary to determine what the proper remedy is when the only legitimate grievance is a breach of the rule of *Witherspoon*. Since it was within the province of the jury to find petitioner (1) guilty as charged, which conviction would carry a mandatory death sentence, or (2) guilty without capital punishment, which conviction would carry a sentence of life imprisonment, it is the opinion of this Court that the effect of the breach of *Witherspoon* is to set aside the death penalty and to impose in its place the other sentence which the jury could have imposed following a finding of guilt, i. e., life imprisonment. A violation of *Witherspoon* does not invalidate the conviction. It only invalidates the death penalty. Thus, it is the opinion of this Court that a writ of habeas corpus should issue herein only to the extent of setting aside the death sentence previously imposed upon petitioner, and imposing in its place a sentence of life imprisonment. Judgment will be entered accordingly.