**Van Allen BEAVER, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Aug. 20, 1971.

Certiorari Denied by Supreme Court
Jan. 3, 1972.

Brett B. Stein, Memphis, for appellant.

David M. Pack, Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Nashville, James G. Hall, Asst. Dist. Atty. Gen., Memphis, for appellee.

OPINION

RUSSELL, Judge.

The appellant, Van Allen Beaver, was convicted of first degree murder in the Criminal Court of Shelby County in 1965,

and his punishment was fixed at death by electrocution. Execution of this sentence has been stayed during pendency, first, of his direct appeal (Beaver v. State, 220 Tenn. 133, 414 S.W.2d 841) wherein his conviction was affirmed; and, subsequently, for a final determination of this post-conviction proceeding.

A multiplicity of questions are raised by the petition for post-conviction relief, filed in 1969 by retained counsel. An evidentiary hearing was had, but the evidence presented took the form of a transcript of the trial and of the voir dire examination of prospective jurors preliminary thereto. Beaver expressly waived his appearance at the hearing, and no testimony was heard. The bill of exceptions presented to us is limited to the transcript of the voir dire examination of prospective jurors for the 1965 trial. The trial judge denied post-conviction relief, and the matter has been appealed to us. Although numerous errors have been assigned, the only proposition briefed deals with whether or not the jury which set the death penalty was unconstitutionally chosen contrary to the rule of our United States Supreme Court as pronounced in the landmark case of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.

 The learned trial judge, in his memorandum finding of facts and conclusions of law, answered the *Witherspoon* question in this language:

"In the case at hand, all of the jurors, who were excused for cause concerning the death penalty, by their answers, either said, positively or, in effect, impliedly, that they could not return a verdict of death by electrocution, and, consequently, were not excused simply because they did not believe in capital punishment, or 'simply because they voiced general objections to the death penalty, or expressed conscientious or religious scruples against its infliction'."

We are unable to agree with this characterization of the record. It is understandable that the jury selection process in this 1965 trial did not conform to the standards of *Witherspoon* not pronounced until 1968; but the explicit retroactivity of that decision requires us to so judge the earlier proceedings. We find no substantial difference between what was done in the case sub judice and that which was condemned in *Witherspoon*. Admittedly, the question that the prosecution was "primarily concerned with" during voir dire was the attitude of the prospective jurors toward capital punishment. Jurors were repeatedly excused for cause when they simply said that they did not believe in capital punishment, or said that they were opposed to it, or didn't believe that they could invoke it, or didn't believe that they could "render the verdict". One was even excused for cause because a member of his family was opposed to capital punishment. Most were summarily excused because they answered in the negative when asked if they could return the death penalty. Those jurors would most likely have been shown by further questioning to have been properly subject to dismissal, depending upon whether or not they could consider all the penalties provided by law or were or not irrevocably committed before trial to vote against the death penalty. A disqualifying statement must be unambiguous and it can never be assumed otherwise that that is the position of the prospective juror. The Court did, rather late in the selection process, advise State's counsel that the controlling question was not whether a juror believed in capital punishment, but rather whether he would invoke it in a proper case; but, significantly, other jurors were subsequently excused when they simply said that they did not believe in capital punishment. One juror was excused simply because he said that he doubted that he could vote the death penalty; another because he stated that he didn't have the nerve; another because he said "it would be awful hard"; and another because he didn't "think so."

To point up the fact that this jury was not selected of people who would consider

the death penalty, but rather of people committed in advance to it, we quote this from the record:

"Mr. Catanzaro: Mr. Turner, you heard the remarks I made just a few minutes ago. In a proper case, sir, where there are no mitigating circumstances, could you fix the extreme punishment, this is, death by electrocution?

"Juror: I hesitate to say that I can do it. I am not sure, really.

"Mr. Catanzaro: Well, you are the only one that can let us know. We have to know from you now. We have to have your answer on it.

"Juror: I think, under those circumstances, I would have to say no.

"The Court: You're excused, sir. Call the next one."

Sometimes, in examining the prospective jurors, State's counsel used "would you" or "will you" instead of "could you" in determining attitude toward invoking the death penalty upon a finding of guilt without mitigating circumstances, obtaining a veritable pledge rather than merely a commitment to consider the death penalty. We do not find that anyone was left upon this jury who did not expressly agree that he could invoke the death penalty upon a finding of guilt without mitigating circumstances.

In *Witherspoon*, the U. S. Supreme Court condemned that part of the Illinois statute which authorized the exclusion of all who said that they were opposed to capital punishment, and all who indicated that they had conscientious scruples against inflicting it. Those same classes of prospective jurors were uniformly excused for cause in the case sub judice.

■ *Witherspoon* holds that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. The later case of Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433, reiterates the rule of *Witherspoon* that the most than can be demanded of a venireman is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings. Exclusion on any broader basis than this makes the carrying out of the death sentence constitutionally impermissible.

■ However, this does not void the conviction. *Witherspoon*, supra, is authority for the proposition that there is no per se constitutional rule requiring the reversal of every conviction returned by a jury improperly selected as in that case. And, as in *Witherspoon*, there is no showing that this jury was biased with respect to the petitioner's guilt. It is only in its role as arbiter of the punishment to be imposed that the jury which tried Beaver fell short of that impartiality declared by the U. S. Supreme Court to be required for compliance with Sixth and Fourteenth Amendment rights.

In Woodards v. Cardwell, 430 F.2d 978 (6th Cir. 1970), it was held that a *Witherspoon* violation did not invalidate the guilty verdict and that only the death sentence imposed by the improperly selected jury could not be executed. In Cardinale v. Henderson, 316 F.Supp. 481 (E.D.La.1970) after finding a *Witherspoon* violation, the court set aside the death penalty and imposed in its place a sentence of life imprisonment. (The trial jury could choose only death or life imprisonment upon a finding of guilt.) The court said, "the effect of the breach of *Witherspoon* is to set aside the death penalty and to impose in its place the other sentence which the jury could have imposed following a finding of guilt." However, in another Louisiana case, Ward v. Henderson, 317 F.Supp. 344 (W.D.La.1970), the court there found a

violation of *Witherspoon* but noted that the U. S. Supreme Court did not specify how such cases would be disposed of. The court then looked to Louisiana law for procedures, if any, by which on remand from the federal court the state court could reduce the sentence in a capital case. The court concluded that it was questionable whether the state court had jurisdiction to reduce a death sentence to life imprisonment since the jury determines the sentence in a capital case. The court then enjoined Louisiana from executing the petitioner and ordered that he be held in custody under conditions no more onerous than had he been sentenced to life imprisonment at his original trial. He was not to be confined on death row.

In Marion v. Beto, 434 F.2d 29 (5th Cir. 1970), the court reversed and remanded the case to the district court with directions that Texas be given the option of determining within a reasonable time whether (1) to resentence the defendant to a sentence not to exceed life imprisonment without a retrial on the issue of guilt, provided such a procedure is appropriate under Texas law, or (2) to vacate the defendant's conviction and sentence and retry him.

In the Arizona case of State v. Sherrick, 105 Ariz. 514, 467 P.2d 908 (1970), the case was remanded for alternative proceedings, either: (1) if the State promptly indicated that it desired to retry Sherrick for the crime of first degree murder with the death penalty, the lower court should set aside the conviction and proceed with a new trial, or (2) if the State did not so move for a new trial, the lower court would set aside the sentence of death and pronounce a sentence of life imprisonment.

In Hawkins v. Rhay, 78 Wash.2d 389, 474 P.2d 57 (1970) the finding of guilt and the degree of the crime were left standing and the court ordered a new trial on the issue of punishment, setting forth comprehensive guidelines for the conduct of the trial, whereupon the jury could consider the death penalty.

In Zimmer v. State, 206 Kan. 304, 477 P.2d 971 (1970) the trial court, upon finding a *Witherspoon* violation upon a post-conviction proceeding, ordered the death sentence set aside and resentenced him to life imprisonment. This action was affirmed.

In People v. Lee, 44 Ill.2d 161, 254 N.E.2d 469 (1970), the appellate court held that if the conviction was sustained by the trial court after a hearing ordered to determine the competency of evidence that had been used upon the trial, then the trial court should resentence the defendant to a penalty other than death.

In State v. Royster, 57 N.J. 472, 273 A.2d 574 (1971), wherein the prosecutor indicated that his office would waive the death penalty, the appellate court reduced the sentence to life imprisonment.

We think it clear that the conviction in this case stands, and we have only to consider the question of the proper procedure for the setting of punishment in this context.

The State is not foreclosed from again seeking the death penalty; nor can we ignore the statutory right of Beaver to have his punishment set by a jury. T.C.A. § 39–2405. Had we not the variety of punishment for first degree murder (from over twenty years, to life, to execution), T.C.A. § 39–2405, we could simply substitute the alternative to death (usually, in other jurisdictions, life imprisonment) and enter judgment accordingly, if the State did not insist upon again seeking the death penalty. However under our cases, we believe that the principle first laid down in Corlew v. State, 181 Tenn. 220, 180 S.W.2d 900, and followed in Forsha v. State, 183 Tenn. 604, 194 S.W.2d 463; Waldie v. State, 190 Tenn. 537, 230 S.W.2d 993; Huffman v. State, 200 Tenn. 487, 292 S.W.2d 738; McInturff v. State, 207 Tenn. 108, 338 S.W. 2d 564; Vowell v. State, 207 Tenn. 598, 341 S.W.2d 735 and stated in Long v. State, Tenn., 443 S.W.2d 476, would require us to set the minimum sentence of twenty years and a day, with the State having the option

of accepting it or not, if we enter a reduced sentence ourselves. Otherwise, the statutory right to have a jury to set the punishment could be said to be abridged.

In our research upon this question we did find cases in which our Supreme Court had commuted sentences from death to life imprisonment; but they were decided in the context of then existing law whereunder the jury only found guilt or not, with a non-binding finding relative to mitigating circumstances, and the trial judge set punishment at either death or life imprisonment. Poe v. State, 78 Tenn. 673; Ray v. State, 108 Tenn. 282, 67 S.W. 553.

We also have cases holding that where the jury's setting of the punishment is illegally high, the relief required is reversal and a new trial as to both guilt and punishment. McDougal v. State, 64 Tenn. 660; Wilson v. State, 103 Tenn. 87, 52 S.W. 869; Cowan v. State, 117 Tenn. 247, 96 S.W. 973; Nashville Railway & Light Co. v. State, 144 Tenn. 446, 234 S.W. 327; Bowmer v. State, 157 Tenn. 124, 6 S.W.2d 326; Van Pelt v. State, 193 Tenn. 463, 246 S.W.2d 87. However, we do not consider these cases to be controlling of the case sub judice, because the punishment which was here set was within the prescribed limits.

We have clear and ample precedent in Tennessee for bifurcated trials, wherein punishment is set by a second jury, after guilt has been legally found by a first. Huffman v. State, 200 Tenn. 487, 292 S.W.2d 738; Mays v. State, 207 Tenn. 129, 338 S.W.2d 572. We, therefore, again affirm the validity of this first degree murder conviction and judgment of guilt; but vacate the punishment set and remand the case for a new trial by a new jury on the issue of punishment only.

WALKER, P. J., and GALBREATH, J., concur.

GALBREATH, Judge (concurring).

I concur basically with Judge Russell's opinion but would substitute the minimum sentence for murder in the first degree for the sentence of death imposed by the unconstitutionally selected jury. Although the Plaintiff in Error does have the unqualified right to have the jury assess his punishment under the mandate given the trial court here, that punishment could in no event be less than twenty years and one day, so the defendant could not possibly benefit from retrial on the issue of punishment.

It could well be that the State would welcome the reduction in sentence rather than incur the considerable expense involved in a retrial. Perhaps not, but under the authorities cited by the majority (Corlew v. State, 181 Tenn. 220, 180 S.W.2d 900, et al.) it would have the election to make on the prosecution level rather than having it made for them by this Court without adequate knowledge of the difficulties, if any, that may be encountered on submitting the necessary proof to another jury.

Of course, it might be that the parties can agree on proper punishment and submit a recommendation acceptable to the court and jury and thus avoid the bulk of any unwanted inconvenience, and with this suggestion I concur in the majority opinion.