STATE of Tennessee, Appellee,

v.

Richard Keith BOWLING, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 3, 1983.

William M. Leech, Jr., Atty. Gen., Wayne E. Uhl, Asst. Atty. Gen., Nashville, Heiskell Winstead, Dist. Atty. Gen., Rogersville, Edward H. Moody, Asst. Dist. Atty. Gen., Morristown, for appellee.

C. Douglas Berryhill, Jefferson City, for appellant.

## OPINION

O'BRIEN, Judge.

Convicted of child abuse in violation of T.C.A. § 39–1019, in the Criminal Court for Hamblen County, defendant was sentenced to serve eleven months and twenty-nine days in the county jail and fined the sum of One Thousand Dollars ($1,000).

He appeals raising three issues which require a summary of the evidence heard at the trial.

Defendant was charged with inflicting injury upon a three-year-old male child by squeezing his penis causing it to become swollen, bruised, and to bleed. He was also charged with awakening the child in the middle of the night and making him stand in a corner, and with striking him upon the head with a spatula. The hard facts related to the injury to the child's penis and we believe it is upon this evidence that the jury returned the verdict of child abuse.

Linda Booth, a woman of about twenty-four years of age, was the mother of the three-year-old child, Stephen Booth. Divorced from the child's father she apparently was not able to acquire, or keep regular employment, living at intervals with her own parents, relatives of her former husband, and with Bowling. She had divorced the child's father in the early part of 1980 and about that time had taken up a living relationship with the defendant. After several months they parted for a length of time and then in February, 1981, began living together again. This arrangement went on until April of that year when the events occurred which resulted in these charges.

According to defendant's version of the relationship between him, Linda Booth, and the child, they lived together on more than one occasion. The first being from June until August of 1980. She left and went to New York until early in November of that year when he went after her at her request and they returned to Morristown where they subsequently resumed their relationship as previously related. He says this was to be on a temporary basis until she could find a job and get out on her own. It was not his plan to enter into any permanent or lasting relationship. Time went on and she did not make any effort to find employment or another place to live. This began to create tension between them which climaxed in a name calling argument in the course of which he struck her in the eye. He says he did not actually intend to hit her and it was his view that the child was a victim of circumstances because he was dependent on his mother for care. Although he was not particularly fond of children he felt sorry for him and assumed responsibility for his welfare, including food and shelter, and discipline when it was required. He confessed that he may have bruised the child's face by grasping him to get his attention, occasionally spanked him, and made him stand in the corner. Although he felt some responsibility for the child because he was living there, he was not prepared to assume the father role until he was ready to have children of his own. In an initial interview with a police officer he denied any knowledge of how the child's penis became bruised. He suggested the child had pinched himself in some fashion. He denied he had awakened the child in the middle of the night but did say he had punished him by making him stand in a corner.

In his second interview a few days later he admitted squeezing the child's penis but stated his belief that any bleeding which occurred was caused by the child himself with long fingernails. He admitted he

could have caused the bruise to the boy's penis by shaking it when he was engaged in toilet training. He said he had been reluctant to tell the officer of this because he might conclude it had been done intentionally. He denied any intentional injury to the child.

■ Defendant raises issues related to the admission of the transcriptions of two tape recorded interviews between him and Detective Martin Coffey of the Hamblen County Sheriff's Department. When objection was made by defense counsel to the admission of these two transcripts the trial judge read them and redacted some portions. He then allowed them to be read to the jury. These transcripts were long rambling interrogations in which the police officer made many extraneous inquiries regarding comments of other unnamed individuals accusing defendant of various offenses not charged in the indictment. This was an obvious effort to have defendant confess to the various offenses which the police office intimated had been related to him by these unnamed informants. Defendant says these irrelevant and prejudicial comments and questions should have been redacted because they were denied by him, not included in the indictment, and not established in any manner by the State's evidence.

We are in accord with the views stated by defendant. State's counsel should not have attempted to introduce these transcripts of the interrogation of defendant by the police officer, nor should the trial court have allowed their admission in the form in which they were offered. Clearly they went far beyond the pale of a confession by the defendant. They contained much inadmissible hearsay by unnamed informants, and had the effect of suggesting by innuendo that defendant had been guilty of a great many other acts of child abuse than those with which he was charged.

In *Wilson v. State,* 472 S.W.2d 235, 4 Tenn.Cr.App. 394 (1971), this Court clearly said that an attempt to communicate impressions by innuendo through questions which are answered in the negative, when the questioner has no evidence to support the innuendo, is an improper tactic which has often been condemned by the courts. The rule that prohibits the admission of the irrelevant evidence also prohibits the asking of questions which by innuendo places it before the jury, although the actual evidence itself is not admitted. See Wharton's Criminal Evidence, 13th Edition, Torcia, Vol. 1, Sec. 164.

■ However we have concluded the erroneous admission of this evidence does not require that the case be reversed. Defendant himself admitted having committed the charges made in the indictment which were proven against him. Mrs. Carrie Keirsey, great-grandmother of the infant child, Stephen Booth, who indicated her disapproval of both the child's mother and the defendant, testified to the presence of the bruises on the child's face and on his penis. She observed both of these injuries while bathing Stephen shortly after the incident purportedly happened. Another witness who had no direct knowledge about how the injuries were sustained observed the condition of the child's penis sometime during the month of April while visiting at the home of Mrs. Keirsey. The mother of the child testified, in pertinent part, that she had pled guilty to child neglect and had been sentenced to six months in the county jail. She said that on the morning after the incident occurred defendant informed her he had hurt Stephen. She identified the child's shorts containing blood stains which he had worn on the night of his injury. After defendant told her he had injured the child she examined him and found his penis to be bruised and bleeding. Defendant said he had squeezed the child while trying to make him go to the bathroom and may have cut his organ with a fingernail. She related other incidents some of which coincided with the questions put to defendant by the police officer. She told of a time when the

child was returned from the hospital after an adenoid operation and was under medication. Defendant allegedly awakened him and would not let him sleep. He told her he would make the child stay up all night even if he had to stay up with him. He did make the child stand in the corner for a few minutes on that occasion. She also related an incident when defendant slapped the child in the face with a spatula as charged in the indictment, and of a time he had grabbed him by the face in an effort to get his attention. Another time he had struck the child in the face with the back of his hand while correcting him about his eating habits.

We do not condone in any fashion the improper manner in which defendant's confession was admitted into evidence. If the case against him had not been made out so positively by his own confession and the testimony of the other witnesses, we think the admission of defendant's unredacted interviews with the police officer, riddled with hearsay and innuendos as they were, would warrant reversal. In view of the maximum sentence imposed by the jury we are of the opinion the verdict was harmfully effected in the area of sentencing rather than that of determining guilt or innocence. See *Smith v. State,* 527 S.W.2d 737 (Tenn. 1975).

■ .The same is true of the admission of photographs of Mrs. Booth showing her with an obviously bruised and blackened eye which defendant admittedly inflicted on her in the course of an argument. It is not disputed that the two of them were in a cuss fight when he struck her, although he said he did not intend to injure her. She said the argument, and ensuing injuries, occurred after defendant acted as he did toward the child on the day they returned from the hospital. Early on in the trial the Assistant District Attorney endeavored, over defense counsel's objections, to admit the photographs showing Mrs. Booth's injuries. The trial court tentatively denied their admission into evidence. In the course of the State's examination of Mrs. Booth relative to defendant's conduct toward the child, the trial judge called a bench conference in which he said:

"I had earlier with-held judgment on pictures, injuries to her. Its my opinion that in view of all the testimony that I've heard, that those pictures should be admissible but the probative value outweighs the prejudicial effect, (sic) shows state of mind of the defendant and his propensity under violence and her credibility."

* * *

[Abridged by the court for publication.]

The record clearly shows the altercation between defendant and Mrs. Booth, when her injuries occurred, was not in conjunction with any of the purported conduct on his part toward the child. While it may have shown the state of mind of the defendant at the time, the incident occurred subsequent to the injuries sustained by Stephen and, according to Mrs. Booth, in the course of an argument based on defendant's prior treatment of him.

We have many cases in which the appellate courts have discussed the question of the admissibility of evidence of other offenses than that for which the accused is on trial, the water shed of which seems to be *Mays v. State,* 145 Tenn. 118, 238 S.W. 1096, 145 Tenn. 118 (1921). See *Hull v. State,* 553 S.W.2d 90 (Tenn.Cr.App.1977); *Bunch v. State,* 605 S.W.2d 227 (Tenn.1980). Defendant's state of mind a day or two after the last acts of abuse against the child, Stephen Booth, certainly was not relevant to the injuries sustained by him. Nor was Mrs. Booth's credibility placed in dispute other than by ordinary and normal cross-examination of defense counsel. Defendant's propensity under violence (sic) is certainly not a valid reason for the admission of the photographs through her testimony. In a case from this Court *Shockley v. State,* 585 S.W.2d 645 (Tenn.Cr.App.1978), authored by

Special Judge Hal Hardin, and dealing with a sex offense, there is a specifically clear analysis of the dangers of admitting evidence of other offenses to establish a defendant's propensity to commit the crime for which he is being tried. We commend a reading of this case to court and counsel. With this admonition we overrule the complaint that the pictures should not have been admitted and find the issue to be without merit. As we stated in reference to the other issues the properly admissible evidence in the record clearly established defendant's guilt beyond a reasonable doubt. T.R.A.P. Rule 13(e). The evidence was more than sufficient to enable any rational trier of fact to find that defendant was guilty of child abuse beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The judgment of guilt is affirmed. We vacate the sentence, *Smith v. State,* supra, and remand the case to the trial court for the fixing of punishment in accordance with the criteria set forth in *Huffman v. State,* 200 Tenn. 487, 292 S.W.2d 738, 200 Tenn. 487 (1956). See *Lay v. State,* 501 S.W.2d 820 (Tenn.Cr.App.1973).

DUNCAN and DAUGHTREY, JJ., concur.