# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT NASHVILLE
_____

|  |  |  |
|---|---|---|
| **AFSOON VAFAIE (formerly** | ) | Davidson County Circuit Court |
| **JANE DOE),** | ) | No. 92C-1642 |
|  | ) |  |
|    Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C. A. No. 01A01-9510-CV-00472 |
|  | ) |  |
| **WALTER R. OWENS, III and** | ) |  |
| **wife, CHERYL ROBERTS OWENS**, | ) |  |
|  | ) |  |
|    Defendants/Appellees. | ) |  |
|  | ) |  |

**FILED**

**September 6, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

_____

From the Circuit Court of Davidson County at Nashville.
**Honorable Barbara N. Haynes, Judge**

**Lee Ofman**, Franklin, Tennessee
Attorney for Plaintiff/Appellant.



**Robert L. Trentham**,
**Mark Tyler Seitz**,
TRABUE, STURDIVANT & DeWITT, Nashville, Tennessee
Attorney for Defendants/Appellees.

OPINION FILED:

**REVERSED IN PART, AFFIRMED IN PART AND REMANDED**


**FARMER, J.**


**CRAWFORD, P.J., W.S** : (Concurs)
**HIGHERS, J.** : (Concurs)

In this case, Plaintiff-Appellant, Dr. Afsoon Vafaie Elmore, appeals the trial court's grant of summary judgment to Defendant-Appellee, Dr. Walter R. Owens, III, with respect to Plaintiff's claims against Dr. Owens for assault, malicious harassment and civil conspiracy. Plaintiff also appeals the trial court's grant of summary judgment to Defendant-Appellee, Cheryl Roberts Owens as to Plaintiff's claims against Mrs. Owens for assault, malicious harassment, outrageous conduct and civil conspiracy. Plaintiff further appeals certain evidentiary rulings made by the trial court during the course of Plaintiff's jury trial against Dr. Owens in which the Plaintiff sought to recover damages for severe emotional distress, arising from the alleged outrageous conduct of Dr. Owens.

The following facts are undisputed: In 1985, while Plaintiff was attending dental school, Dr. Owens employed Plaintiff as a dental assistant at his business, American Dental Centers, P.C. (American Dental). Later that same year, Plaintiff and Dr. Owens, both single at the time, became romantically involved. When Plaintiff earned her license to practice dentistry in 1987, she began to work as a dentist at American Dental.

Sometime around 1986 or 1987, Dr. Owens started taking pictures and videotape of Plaintiff and himself engaged in various sexual acts.[1] Around 1990, their romantic relationship soured and, in June of 1990, their business relationship ended when Plaintiff left Dr. Owens' clinic and became self-employed. After their business relationship ended, the parties began to argue about who was responsible for certain debts incurred during the course of their business and personal relationship. The three major items of dispute concerned liability for (1) a bank note for a Mercedes-Benz automobile, purchased by the Plaintiff, upon which Dr. Owens was a cosigner; (2) a lab bill for $700, resulting from the loss of a temporary bridge, which had been ordered by Plaintiff; and (3) an Internal Revenue Service assessment of approximately $13,000, arising from an underpayment of Plaintiff's income taxes while she was working at American Dental.

In February, 1991, Plaintiff married Joe Elmore, and in March of 1991, Dr. Owens married Cheryl Roberts. In July, 1992, Plaintiff brought this lawsuit under the pseudonym of "Jane

---

[1]Plaintiff concedes that she was fully aware that Dr. Owens was making these movies and pictures, but argues that she did not formally consent to them.

Doe" against Dr. and Mrs. Owens, alleging that Dr. and Mrs. Owens were attempting to coerce Plaintiff into paying the disputed debts by threatening to expose sexually explicit pictures of Plaintiff to Plaintiff's husband, neighbors and friends. She alleged that in June of 1991, Defendants mailed an envelope to her home, which contained photocopies of six pictures of Dr. Owens and Plaintiff engaged in sexual activity. Plaintiff further alleged that prior to and after the mailing of the envelope to her, Defendants had continually threatened to expose the pictures to others.

Plaintiff alleged that both Defendants and American Dental were liable to her for her injuries, pain and suffering, psychological injuries, severe emotional distress, humiliation and embarrassment, loss of pay, loss of income, and medical expenses experienced as a result of Defendants' outrageous conduct, intentional infliction of emotional distress, negligence *per se* and extortion.

In response to Plaintiff's original complaint, Defendants and American Dental moved to dismiss for failure to state a cause of action under Rule 12.02 T.R.C.P. and for failure to include the name of the plaintiff under Rule 10.01 T.R.C.P. Following a hearing on both motions, the trial court dismissed Plaintiff's claims against American Dental and ordered the Plaintiff to substitute her legal name for "Jane Doe."

Plaintiff filed an Amended Complaint that inserted her legal name as the plaintiff. After substantial discovery, Plaintiff sought to further amend her Amended Complaint to allege civil assault, malicious harassment in violation of T.C.A. § 5-21-701, and civil conspiracy. The motion was granted and Plaintiff's Second Amended Complaint was filed on July 5, 1994.

Defendants moved for summary judgment as to all counts of Plaintiff's Second Amended Complaint. The trial court granted summary judgment on all counts in favor of Mrs. Owens and granted summary judgment in favor of Dr. Owens on all counts except outrageous conduct and intentional infliction of emotional distress.

The case went to trial on the issue of whether Dr. Owens was liable to Plaintiff for outrageous conduct and intentional infliction of emotional distress. The jury returned a verdict in

favor of Dr. Owens.

Plaintiff has presented the following issues for our review:

I. Whether or not the trial court properly dismissed all counts of the Second Amended Complaint as to Defendant Cheryl Roberts Owens and all counts except Count 3 as to Walter R. Owens, III, upon Defendants' motion for summary judgment.

II. Whether or not Rule 408, Tennessee Rules of Evidence, properly excluded Plaintiff's letter to Defendant dated June 22, 1992.

III. Whether or not Rule 408, Tennessee Rules of Evidence, properly excluded two letters written by Defendants' attorney, Clark Tidwell, to Plaintiff's attorney on August 24 and August 26, 1992.

IV. Whether or not the trial court properly admitted into evidence the transcriptions of the video film.

V. Whether the trial court properly admitted evidence of two sexual encounters with men other than Defendant and whether the court properly admitted evidence of two abortions.

As her first issue, Plaintiff argues that the trial court erred in granting summary judgment to Dr. Owens with respect to Plaintiff's claims for assault, malicious harassment and civil conspiracy. Plaintiff further argues that the trial court erred in granting summary judgment in favor of Mrs. Owens in respect to Plaintiff's claims for assault, malicious harassment, outrageous conduct and civil conspiracy.

We begin our review by noting that a trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56.03 T.R.C.P.; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn. App. 1992).

When a motion for summary judgment is made, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof, that is, the "court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd,* 847 S.W.2d at 210-11. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. [citations omitted]. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (emphasis in original).

The summary judgment process should only be used as a means of concluding a case when there are no genuine issues of material fact, and the case can be resolved on the legal issues alone. *Id.* at 210 (citing *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988)).

In counts one and two of her Second Amended Complaint, Plaintiff alleged that Dr. and Mrs. Owens were liable to her for assault. The criminal offense of assault is codified at T.C.A. § 39-13-101. Under the modern criminal statute, a person commits an assault who: (1) intentionally, knowingly or recklessly causes bodily injury to another; (2) intentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative. T.C.A. § 39-13-101 (1991).

The criminal statute does not provide for a private cause of action. Therefore, to locate the elements of the civil cause of action for assault, one has to look to Tennessee common law. At common law, assault was defined as "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against that person." *Huffman v. State*, 292 S.W.2d 738, 200 Tenn. 487 (Tenn. 1956) (overruled on other grounds by *State v. Irvin*, 603 S.W.2d 121 (Tenn. 1980)); *Casey v. State*, 491 S.W.2d 90 (Tenn. Crim. App. 1972).

In the instant case, Plaintiff alleged in an affidavit, filed in opposition to Defendant's motion for summary judgment, that Dr. Owens threatened the Plaintiff by telling her "that he would have [her] 'rubbed out by a Teamster member' "; that Plaintiff should watch where she goes and

look behind the bushes and stay in public places; "that [Mrs. Owens'] mental patients/clients were liable to do anything and owed [Mrs. Owens] a lot of favors and would do anything [Mrs. Owens] told them to do."

Even if the Plaintiff's allegations are true, we do not believe that, as a matter of law, she has presented sufficient facts to state a cause of action for assault against the Defendants. According to Plaintiff's affidavit, the alleged threats were always threats of future harm, and were not threats of immediate or imminent harm. In no instance, were the threats "coupled with the present ability to act," or, to borrow the words of the criminal statute, there was never a threat of "imminent bodily injury." As such, we do not believe that the allegations contained in Plaintiff's affidavit state a cause of action for assault. Accordingly, we hold that the trial court properly granted summary judgment to both Defendants as to the counts for assault.

In counts three and four of her Second Amended Complaint, Plaintiff alleged that Defendants' actions constituted outrageous conduct and intentional infliction of emotional distress. The trial court granted summary judgment in favor of Mrs. Owens on the claim of outrageous conduct while holding that summary judgment was not appropriate for Dr. Owens on the same claim.[2] Plaintiff argues that the trial court erred. We agree and reverse the trial court's ruling.

A cause of action for outrageous conduct was first recognized in this jurisdiction in *Medlin v. Allied Inv. Co*., 217 Tenn. 469, 398 S.W.2d 270 (1966). In *Medlin*, the Court, adopting the rule as expressed in the Restatement (Second) of Torts § 46, stated:

> These factors are set out in the Restatement of Torts (2d), Sec. 46, "Outrageous Conduct Causing Severe Emotional Distress".
>
> "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm results from it, for such bodily harm."
>
> Clarification of this statement is found in the following comment:

---

[2]The jury returned a verdict in favor of Dr. Owens as to outrageous conduct and intentional infliction of emotional distress.

"d. Extreme and Outrageous Conduct. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct is characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'"

*Medlin*, 398 S.W.2d at 274.

Pursuant to *Medlin*, liability for the tort of "outrageous conduct" exists only where (1) the conduct of the defendants has been so outrageous in character, and so extreme in degree, as to be beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society, and (2) the conduct results in serious mental injury. *Id.; Swallows v. Western Elec. Co., Inc.*, 543 S.W.2d 581, 582 (Tenn. 1976); *Dunn v. Moto Photo, Inc.*, 828 S.W.2d 747, 752 (Tenn. App. 1991). Liability for the tort does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities. *Swallows,* 543 S.W.2d at 583-83.

It is the trial court's responsibility to determine, in the first instance, whether the defendant's conduct as a matter of law is so extreme and outrageous as to permit recovery. *Alexander v. Inman*, 825 S.W.2d 102, 105 (Tenn. App. 1991) (citing *Medlin,* 398 S.W.2d at 275).

In her affidavit filed in opposition to Defendants' motions for summary judgment, Plaintiff alleged that Defendants worked in tandem to coerce her to pay the disputed debts. She alleged that both Defendants sent her pictures through the mail and that they both threatened to expose the pictures to her husband if she did not comply with their demands. In addition, she alleged that Mrs. Owens threatened to call Joe Elmore, Plaintiff's husband and tell him that Plaintiff had been sleeping with Dr. Owens while Plaintiff and her husband were dating. Plaintiff further alleged that both Defendants' actions had caused her severe emotional distress, humiliation, psychological injuries and embarrassment.

Given that Plaintiff alleged that Mrs. Owens was complicit in all of Dr. Owens' actions that resulted in Plaintiff's damages, it is difficult to see how the trial court could have dismissed Plaintiff's cause of action against Mrs. Owens while allowing the same claim to go to the jury in regard to Dr. Owens.

Notwithstanding the fact that the jury found Dr. Owens not liable for outrageous conduct, this Court finds that reasonable minds might differ as to whether the acts of Mrs. Owens were sufficiently egregious to sustain a cause of action for outrageous conduct. Consequently, we reverse the trial courts grant of summary judgment in respect to Plaintiff's claim of outrageous conduct against Mrs. Owens.

In counts five and six of her Second Amended Complaint, Plaintiff alleged that the Defendants were liable to her for malicious harassment in violation of T.C.A. § 4-21-701.

Under T.C.A. § 4-21-701:

> (a) In addition to the criminal penalty provided in Sec. 39-17-313 [repealed], there is hereby created a civil cause of action for malicious harassment.
> (b) A person may be liable to the victim of malicious harassment for both special and general damages, including, but not limited to, damages for emotional distress, reasonable attorney's fees and costs, and punitive damages.

T.C.A. § 4-21-701 (Supp. 1995). This statute has a short, but clouded history. In 1990, the statute was enacted and contained a cross-reference to 39-17-313 (1991). In 1990, T.C.A. § 37-13-313 was repealed by the legislature and the crime of malicious harassment was recodified at T.C.A. § 37-17-309. **1990 Tenn. Pub. Acts ch. 984 § 2.** In the 1991 replacement volume of Volume 2A of the Tennessee Code the cross-reference was changed to T.C.A. § 39-17-309. However, in the 1993 supplement to Volume 2A of the Tennessee Code, the cross-reference was returned to "Sec. 39-17-313 [repealed]." T.C.A. § 4-21-701 (Supp. 1993). The Code Commission included the following note in the 1993 supplement:

> This section originally contained a reference to § 39-17-313. During the 1991 replacement of Volume 2A the publisher was instructed to change the reference from § 39-17-313 to § 39-17-309 since § 39-17-313 was repealed; however, that instruction has been superseded and the section returned to the original language.

T.C.A. § 4-21-701 (Supp. 1993). Consequently, it is unclear whether the legislature intended that a private cause of action exists in Tennessee for the criminal act of malicious harassment as defined in T.C.A. § 39-17-309. *See Young v. State Farm Mut. Auto. Ins. Co.*, 868 F. Supp. 937, 942 (W.D. Tenn. 1994) (noting that a question exists as to what section of the Tennessee criminal code provides a civil remedy for malicious harassment). However, we do not think it necessary to address this issue because we find that Plaintiff has failed to state a cause of action under the underlying malicious harassment statute, T.C.A. § 39-17-309.

T.C.A. § 39-17-313 was replaced by § 39-17-309, which went into effect on April 12, 1990. **1990 Tenn. Pub. Acts ch. 984 § 2**. Thus, T.C.A. § 39-17-309 was in effect almost a year prior to the acts of Defendants alleged in Plaintiff's complaint. T.C.A. 39-17-309 provides:

> (a) The general assembly finds and declares that it is the right of every person regardless of race, color, ancestry, religion or national origin, to be secure and protected from fear, intimidation, harassment and bodily injury caused by the activities of groups and individuals. It is not the intent of this section to interfere with the exercise of rights protected by the constitution of the United States. The general assembly recognizes the constitutional right of every citizen to harbor and express beliefs on any subject whatsoever and to associate with others who share similar beliefs. The general assembly further finds that the advocacy of unlawful acts by groups or individuals against other persons or groups for the purpose of inciting and provoking damage to property and bodily injury or death to persons is not constitutionally protected, poses a threat to public order and safety, and should be subject to criminal sanctions.
> (b) A person commits the offense of intimidating others from exercising civil rights who:
> (1) Injures or threatens to injure or coerces another person with the intent to unlawfully intimidate another from the free exercise or enjoyment of any right or privilege secured by the constitution or laws of the state of Tennessee;
> (2) Injures or threatens to injure or coerces another person with the intent to unlawfully intimidate another because that other exercised any right or privilege secured by the constitution or laws of the United States or the constitution or laws of the state of Tennessee;
> (3) Damages, destroys or defaces any real or personal property of another person with the intent to unlawfully intimidate another from the free exercise or enjoyment of any right or privilege secured by the constitution or laws of the state of Tennessee; or

(4) Damages, destroys or defaces any real or personal property of another person with the intent to unlawfully intimidate another because that other exercised any right or privilege secured by the constitution or laws of the United States or the constitution or laws of the state of Tennessee.

(c) It is an offense for a person to wear a mask or disguise with the intent to violate subsection (b).

(d) A violation of subsection (b) is a Class D felony. A violation of subsection (c) is a Class A misdemeanor.

(e) The penalties provided in this section for intimidating others from exercising civil rights do not preclude victims from seeking any other remedies, criminal or civil, otherwise available under law.

T.C.A. 39-17-309 (1991).

Clearly, Plaintiff has failed to state a cause of action under this statute. T.C.A. § 39-17-309 contains language indicating a purpose of protection from serious injury or threat of injury against a party for exercising his or her civil rights. Plaintiff does not allege in her complaint or in her affidavit filed in opposition to Defendant's motion for summary judgment that Defendants' actions were intended to prevent her from exercising any one of her civil rights nor has she alleged that Defendants' actions were motivated by anything other than their desire that she accept liability for the disputed debts. As such, Defendants' alleged conduct does not amount to an injury or a threat of injury or coercion as contemplated by the statute. Consequently, we hold that the trial court properly dismissed Plaintiff's claims for malicious harassment against both Dr. Owens and Mrs. Owens.

In count seven of her Second Amended Complaint, Plaintiff alleges that Defendants' acts constitute a civil conspiracy. Under Tennessee law, a civil conspiracy is a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Kirksey v. Overton Pub, Inc*., 739 S.W.2d 230, 236 (Tenn. App. 1987) (quoting *Dale v. Thomas H. Temple Co.*, 186 Tenn. 69, 208 S.W.2d 344, 347 (1948)). The requisite elements of the cause of action are common design, concert of action, and an overt act. *Braswell v. Carothers*, 863 S.W.2d 722, 727 (Tenn. App. 1993); *Koehler v. Cummings*, 380 F. Supp. 1294, 1313 (M.D. Tenn. 1974). Injury to person or property, resulting in attendant damage, must also exist. *Braswell*, 863 S.W.2d at 727.

Plaintiff's allegations, if true, would show that Dr. and Mrs. Owens participated in the common design of getting Plaintiff to accept liability for the disputed debts; that they acted in concert by mutually threatening Plaintiff with the dissemination of the explicit photographs possessed by Dr. Owens; and that their alleged acts of extortion,[3] coupled with the mailing of the six pictures to Plaintiff, constituted an overt act. Furthermore, Plaintiff alleges that by these concerted actions she endured mental suffering. It is clear that damages for mental suffering constitute injury to a person and are recoverable in an action for civil conspiracy. *Id.; Lackey v. Metropolitan Life Ins. Co.*, 30 Tenn. App. 390, 206 S.W.2d 806 (1947). Based on the foregoing, we conclude that Plaintiff's alleged facts in her complaint that, if proven true, could have constituted a cause of action for civil conspiracy. We conclude that Plaintiff has stated a cause of action for civil conspiracy "to accomplish by concert" the unlawful purpose of extorting money. Consequently, we hold that the trial court erred in granting summary judgment to Defendants on the counts of civil conspiracy.

As her second issue, Plaintiff argues that the trial court erred in excluding a letter, written by Plaintiff's attorney prior to the filing of Plaintiff's lawsuit, requesting that Dr. Owens turn over to Plaintiff all sexually explicit photographs and video film in exchange for Plaintiff's promise to not bring suit against Dr. and Mrs. Owens. Plaintiff attempted to offer this letter at trial to rebut Defendants' claims that Plaintiff had sued them out of vindictiveness and greed.

Under Tennessee Rule of Evidence 408,

---

[3]In her Second Amended Complaint, Plaintiff alleges a violation of Tennessee's criminal extortion law, T.C.A. § 39-14-112, as the underlying "unlawful" act of Defendants' civil conspiracy. T.C.A. § 39-14-112 provides in pertinent part:

> (a) A person commits extortion who uses coercion upon another person with the intent to:
> (1) Obtain property, services, any advantage or immunity; or
> (2) Restrict unlawfully another's freedom of action.
> (b) It is an affirmative defense to prosecution for extortion that the person reasonably claimed:
> (1) Appropriate restitution or appropriate indemnification for harm done; or
> (2) Appropriate compensation for property or lawful services.

T.C.A. § 39-14-112 (1991). There is some confusion in this case as to whether Plaintiff is attempting to recover civilly for a violation of this criminal statute. It does not appear to this Court that Plaintiff contends that Defendants are civilly liable to Plaintiff solely for their alleged violation of the extortion statute. Instead, it appears that Plaintiff is attempting to recover for Defendants' civil conspiracy, which was based upon Defendants' concerted acts of extortion.

Evidence of (1) furnishing or offering to furnish or (2) accepting or offering to accept a valuable consideration in compromising or attempting to compromise a claim, whether in the present litigation or related litigation, which claim was disputed or was reasonably expected to be disputed as to either validity or amount, is not admissible to prove liability for or invalidity of a civil claim or its amount or a criminal charge or its punishment. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence actually obtained during discovery merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution; however, a party may not be impeached by a prior inconsistent statement made in compromise negotiations.

Rule 408 is intended to encourage settlement of suits by forbidding a party from pointing to an opponents settlement offer as proof that the opponent thought that he would lose. *Evans v. Troutman*, 817 F.2d 104 (6th Cir. 1987). The rule promotes settlement "through a free exchange of offers and the recognition that an offer of settlement may not necessarily reflect the belief that the adversary's claim has merit." *Bulaich v. AT & T Information Systems*, 778 P.2d 1031, 1036 (Wash. 1989) (citing E. Cleary, *McCormick on Evidence* § 274 (3d ed. 1984). However, when the settlement offeror is the same party attempting to gain the admission of the settlement letter into evidence, the threat of admissibility should not be a deterrent to the articulation of a settlement proposal. *Bulaich*, 778 P.2d at 1036; *Crues v. KFC Corp*. 768 F.2d 230, 233-34 (8th Cir. 1985).

In the instant case, where the letter of compromise was offered by the same party, who had originally proposed the settlement, we think that the trial court erred in excluding the letter. However, we hold that the trial court's error was harmless in that we cannot find the exclusion of the evidence "more probably than not affected the judgment." Rule 36(b) T.R.A.P.

As her third issue, Plaintiff argues that the trial court erred in excluding two letters written by Defendants' legal counsel on August 24, 1992, and August 26, 1992. Plaintiff attempted to offer these letters to rebut Defendants' claim that the sexually explicit pictures of Plaintiff had been destroyed prior to the filing of Plaintiff's lawsuit. The Plaintiff offered the letters to show that the photographs had not been destroyed as Dr. Owens contended and to show that Dr. Owens could have sent the pictures. The trial court excluded the letters, finding that the letters were offers of

compromise and settlement and were therefore inadmissable under Tennessee Rule of Evidence 408.

As noted *supra*, Rule 408 prohibits the admission of evidence obtained during settlement negotiations when such evidence is offered to "prove liability for or invalidity of a civil claim or its amount." Tenn. R. Evid. 408. Plaintiff argues that the letters were not offered to prove Dr. Owens' liability, but were offered only to show that Dr. Owens was not being truthful when he claimed that he had destroyed the pictures prior to the filing of Plaintiff's lawsuit. As such, the letters would have necessarily tended to impeach the credibility of Dr. Owens. While Rule 408 does allow the admission of evidence from settlement negotiations when it is offered for a purpose other than to prove liability or invalidity, the rule provides that "a party may not be impeached by a prior inconsistent statement made in compromise negotiations." Consequently, we believe that the trial court properly excluded the letters of compromise when they were offered to impeach the testimony of Dr. Owens.

As her fourth issue, Plaintiff argues that the trial court erred in admitting a transcript of one of the videotapes made by Dr. Owens, which contained scenes of Plaintiff engaged in sexual activity. Plaintiff objected to the admission of the transcript on the basis of relevancy under Tennessee Rule of Evidence 401 and on the basis that its probative value was substantially outweighed by danger of unfair prejudice under Tennessee Rule of Evidence 403.

Tennessee Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In our opinion, the transcript was relevant. In her pleadings, Plaintiff contended that she had not consented to Dr. Owens taking pictures and videotaping their sex acts. Moreover, Dr. Phillip Chanin, Plaintiff's treating psychiatrist, testified that while he was evaluating Plaintiff's condition, she told him that the pictures and videotapes were made without her consent. Thus, we believe that Plaintiff, through her pleadings and expert testimony, opened the door to the issue of her consent.

Tennessee Rule of Evidence 403 excludes relevant evidence only when its probative value is substantially outweighed by the danger of unfair prejudice. The ultimate decision regarding

admissibility and relevancy lies within the sound discretion of the trial judge and, absent an abuse of discretion, that decision will not be overturned on appeal. *See Wright v. Quillen*, 909 S.W.2d 804, 809 (Tenn. App. 1995). Contrary to Plaintiff's allegations, the transcript from the videotape shows that Plaintiff was cognizant of the video camera and took an active, and sometimes directorial role in the videotaping of the couple's sexual activity. Thus, its probative value was relevant with respect to the issue of consent, particularly as it applied to the outrageousness of Defendants' conduct and to the validity of Dr. Chanin's psychological evaluation. In our opinion, the trial court did not abuse its discretion in admitting the transcript into evidence.

As her final issue, Plaintiff argues that the trial court erred in allowing the introduction of evidence concerning the prior sexual encounters and elective abortions of Plaintiff. As noted *supra*, admissibility and relevancy are matters within the sound discretion of the trial judge. *Wright*, 909 S.W.2d at 809. In the instant case, Plaintiff sought compensation exclusively for psychological damage. In our opinion, evidence of Plaintiff's failed relationships, prior sexual encounters and elective abortions were all relevant under Rule 401 as to the issue of causation of Plaintiff's psychological and emotional damage in that they provided the jury with other plausible explanations for Plaintiff's mental condition. Consequently, we are unable to find an abuse of discretion.

In summary, we hold that the trial court erred in granting summary judgment to Mrs. Owens on the counts of outrageous conduct and intentional infliction of emotional distress. We hold that the trial court erred in granting summary judgment in favor of both Defendants on the count of civil conspiracy.

The judgment of the trial court is reversed in part, affirmed in part and remanded for further proceedings consistent with this opinion. Costs on appeal are taxed one-half to Appellant and one-half to Appellees for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)


_____
HIGHERS, J. (Concurs)