**Harry ARMSTRONG, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

March 2, 1977.

Certiorari Denied by Supreme Court
Sept. 26, 1977.

David Vincent, Nashville, for appellant.

R. A. Ashley, Jr., Atty. Gen., Linda Ross Butts, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., John E. Rodgers, Asst. Dist. Atty. Gen., Nashville, for appellee.

OPINION

DAUGHTREY, Judge.

The defendant-appellant, Harry Armstrong, was convicted by a Davidson County Criminal Court jury of selling heroin, a Schedule I drug under the Tennessee Drug Control Act, T.C.A. § 52–1413(b)(10). He was sentenced to serve not less than ten nor more than fifteen years in the penitentiary and fined $18,000.00. Without challenging the sufficiency of the evidence to sustain this conviction, Armstrong raises several assignments of error regarding procedural aspects of his trial. For the reasons set out below, we find that at least two of the alleged errors have adversely affected his right to a fair trial, and accordingly modify the judgment of the trial court and remand this case for further proceedings.

### I. The Wiretap Controversy

The defendant first contends that this prosecution should have been dismissed by operation of law, specifically T.C.A. § 52–1438, which bars retrial in the courts of Tennessee of a defendant who has been tried in another state or in federal court for an offense which is a violation of the Tennessee Drug Control Act. Armstrong argues that the dismissal of a federal indictment charging him, along with others, with conspiring to sell heroin and cocaine and distribution of heroin and cocaine in the Middle District of Tennessee between April 1973 and November 1974 served as the "functional equivalent" of an acquittal of those charges, for the purpose of barring a subsequent trial in state court under T.C.A. § 52–1438. We do not agree. The federal

indictment in question was dismissed upon pre-trial motion of the government, when it was learned that an illegal wiretap had been placed on the defendant's telephone. It is clear that dismissal upon pre-trial motion does not bar further prosecution because it occurs prior to the defendant's being placed in jeopardy. *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Retrial will not be barred by T.C.A. § 52–1438 unless jeopardy has attached in the prior trial, and the defendant is not placed in jeopardy until the jury is impanelled. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). This assignment is overruled.

During the defendant's trial, much was made of the illegal wiretap which was the cause of the dismissal of the federal indictment, and the local police internal affairs investigations which it engendered. The single sale of narcotics which was the subject of the instant prosecution took place on February 7, 1974, a date within the period of conspiracy alleged in the federal indictment. According to the record, the police secured the cooperation of one Benjamin (Cootsie) Whitfield, who agreed to place a telephone call to the defendant's place of business, a local service station, for the purpose of arranging a drug buy. In two recorded phone conversations with the defendant, which occurred on February 7 and which were later replayed for the jury, Whitfield first inquired about the possibility of buying a quantity of cocaine, and later agreed with Armstrong to the purchase of a relatively small amount of heroin.* The exchange took place at an assigned location shortly thereafter. It was photographed and also was overheard by a police officer hidden in the trunk of Whitfield's car. The actual transfer to Whitfield was made by Homer Goodwin, an employee at the defendant's service station. Goodwin originally was jointly indicted with the defendant for the sale in question; his case was later severed and both he and Whitfield testified for the State concerning the details of the sale. Goodwin maintained that

he was acting as Armstrong's agent in carrying out the transaction.

In an effort to show that the illegal wiretap was installed prior to February 7, 1974, the defense moved to be allowed to inspect any records in the possession of the State related to this wiretap, including transcripts of conversations and statements made by the officers involved during federal and state investigations into the illegal wiretapping. After these motions were denied, the defense made an oral motion that the Court inspect these files in camera and decide whether this material contained any evidence which might tend to be exculpatory in nature. This motion was also overruled.

■ When it is alleged that a prosecution is tainted by evidence which has been gathered through illegal electronic eavesdropping, the burden is on the defendant to make out a prima facie case that the illegal wiretapping did indeed take place. If this sizable hurdle can be cleared, then by law the burden of proof shifts to the State to show that none of the evidence to be introduced against the defendant is "fruit of the poisoned [wiretap] tree," but was secured through a completely independent source or sources. *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). In the instant case, the trial court specifically ruled that the defendant had failed to carry his burden under *Nardone, supra*, and refused to require the State to show that its case against the defendant arose from sources independent of any illegal wiretapping.

■ It appears from the record of the arguments below and from those before this Court that both the defendant and the trial court were unaware of the opinion of the United States Supreme Court in *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). In *Alderman* the Supreme Court dealt with the difficulties faced by a defendant in attempting to sustain the burden of proof necessary to shift the onus onto the State to prove the independent sources of its case. *Alderman*

---

* The 1.2 grams of powder involved in the sale had a 13.9% heroin content. The toxicologist testified that a normal percentage on a "street" sale would range between 2% and 15%. The amount of money which changed hands was $125.00.

holds that "surveillance records as to which any petitioner has standing to object should be turned over to him without being screened in camera by the trial judge." 394 U.S. at 182, 89 S.Ct. at 971. The reason for requiring this information to be made available to the defendant directly was clearly set out by the Court:

An apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances. Unavoidably, this is a matter of judgment, but in our view the task is too complex, and the margin for error too great, to rely wholly on the in camera judgment of the trial court to identify those records which might have contributed to the Government's case.

Petitioner Alderman's conviction was remanded to the District Court for a two-pronged determination: first, whether there was any electronic surveillance in violation of his Fourth Amendment rights; and, secondly, if there was such eavesdropping, "the nature and relevance to his conviction of any conversations which may have been overheard through that surveillance." 394 U.S. at 186, 89 S.Ct. at 973.

In the case of defendant Armstrong there is ample evidence of, and the State all but concedes, the existence of an illegal wiretap on the telephone at the defendant's place of business. The *Nardone* arguments at trial centered around Armstrong's attempt to show that the wiretap was in place prior to February 7, 1974, the date of the sale which is the basis of this conviction. To aid in this effort, Armstrong had filed a timely motion for discovery of existing investigatory reports related to the wiretap, or alternatively for an in camera inspection of these records by the trial judge. The transcript of the pre-trial hearing on this motion tends to indicate that the files were highly relevant to, and very possibly conclusive on the

factual issue raised. The trial judge denied the defendant's discovery motion, apparently in response to the State's contention that the material was not subject to discovery under T.C.A. § 40–2044, and without addressing the constitutional mandate of *Alderman*. Because the defendant could not show, prima facie, that Armstrong's phone was "bugged" on February 7 or before, the trial court overruled the *Nardone* motion. Under the circumstances we think this was error.

■ The issue of the illegal wiretapping to secure information that is later made the basis of a criminal prosecution falls into a highly sensitive constitutional area under the Fourth Amendment. While we would willingly agree that an accused has no right to unlimited inspection of government files, especially when those files are likely to contain information which could affect the safety of government undercover agents and informants, it is also apparent that no harm can result from the trial court's inspection of such records whenever it appears that their content will shed light on the very question presented for determination: whether in fact illegal taps were used against the accused and, if so, when they were put into operation. This kind of information is peculiarly available to the prosecution and will rarely, if ever, be openly or readily accessible to the accused, thus making the burden under *Nardone* nearly impossible to sustain in the absence of aid from the court, an institution which is charged with the ultimate responsibility of protecting rights under the federal and state constitutions. For a court to refuse to inspect relevant records in this setting strikes us as a virtual abdication of the court's constitutional duty under the Fourth Amendment.

The holding in *Alderman* means that ultimately an in camera inspection by the trial judge may not be enough to fully protect the defendant's Fourth Amendment rights, and that once the court finds, prima facie, the existence of an illegal wiretap, any surveillance records made by the government or state must be turned over to the defendant for use in rebutting the prosecution's contention that the case is untainted by the

illegal wiretap. Because the wiretap ruling below was made without benefit of court inspection of the relevant records and without compliance with the dictates of *Alderman*, we find that the defendant's rights under the Fourth Amendment and under the Due Process Clause were not fully protected. It follows that the case must be remanded for further proceedings related to the wiretap controversy.

Upon remand, the trial judge is ordered to inspect all relevant available records for the purpose of making a redetermination of the initial prong of the *Alderman* test: whether an illegal wiretap was installed on the defendant's telephone on or prior to February 7, 1974. If the court finds that no such wiretap existed on or before that date, the conviction will stand affirmed as modified below in Section III. If, however, the court finds that the records tend to establish the existence of illegal eavesdropping on or before the date in question, the court must then schedule a new *Nardone* hearing and immediately release to the defendant any *Alderman* material contained in those records.

At the rehearing, two results are possible. The State may be able successfully to carry the burden assigned under *Nardone* by establishing as the basis for the prosecution against Armstrong a source of information independent of the illegal tap. If so, the conviction will stand affirmed as modified below. On the other hand, if the State is unable to discharge its burden, the court, having found the prosecution to be tainted by the illegal wiretap, must enter an order dismissing this case.

Both the determination as to the necessity for a new hearing and any resulting order will be reviewable by this court, but the finding of the jury as to the defendant's guilt will not be subject to further review. In the event that the case is again brought before this court, all records inspected by the trial court shall be sealed and made a part of the record on appeal.

## II. *Alleged Errors At Trial*

■ The defendant alleges that prosecutorial misconduct at trial requires the reversal of his conviction. We do not agree. From a thorough reading of the record we are convinced that although the prosecutor did wander near the borders of acceptable conduct at various intervals during his argument, defense counsel objected to these sallies. The trial court, thus alerted, cautioned counsel for the State and properly instructed the jury regarding these matters. Any error was corrected by these timely instructions.

■ The defendant next alleges that an agreement existed between the State and a prosecution witness, Homer Goodwin, and that the State denied the defendant due process by failing to disclose such agreement to the jury. Reviewing the record, we find that the evidence does not support this contention. When asked to reveal such an agreement, the State denied its existence, and the defendant was unable to rebut this denial. Moreover, the jury was made aware of the cooperation that had occurred between the witness and the State. On cross-examination Homer Goodwin admitted that officers of the Metro Police Vice Squad and the Federal Drug Enforcement Agency had intervened in his behalf in the matter of the revocation of his probation and that they had helped secure his release from jail. Defendant's allegation that Goodwin had been receiving money from the federal government and the Metro Vice Squad over a period of several months is not supported by the evidence. The record does show that the witness appeared to act on the expectation that he would benefit from testifying against the defendant, and the existence of such an expectation was conveyed effectively to the jury on cross-examination. This assignment is overruled.

■ In another assignment of error, the defendant challenges the ruling of the trial court releasing the State from the responsibility for the attendance at trial of a key prosecution witness, Cootsie Whitfield. This witness had been in protective custody until the day he was called to testify by the State. When court was adjourned that afternoon, the defendant requested the trial court to order the State to retain Whitfield in protective custody for an additional

night, so that he might be recalled the following day by the defendant for the purpose of impeaching his credibility. The State objected, saying that it had "exhausted its funds and facilities and its personnel in protecting this man." The trial court released the State from responsibility, but "admonished" the witness to return the next morning. When Whitfield did not appear the court issued an attachment for his arrest, but the capias was never successfully executed.

While this issue addressed itself to the discretion of the trial court, "constitutional requirements are not, in this day, to be measured or limited by dollar considerations." *Jackson v. Bishop*, 404 F.2d 571, 580 (8th Cir. 1968). These words from now Justice Blackmun should guide the trial court and the prosecution in the future. However, in the present case there was no resulting prejudice to the defendant because the jury was made aware of the prior inconsistent testimony which was to be the basis of the impeachment on recall by introduction of the official, transcribed copy of that prior testimony.

### III. *The Sentence*

 Finally, the defendant contends that the State introduced evidence of crimes other than the one charged for the prejudicial purpose of influencing the jury to double the minimum sentence, as provided in T.C.A. § 40–2707. Reading the record, this Court is alarmed at the lengths to which the prosecution went in its attempt to portray the defendant as engaged in continuing, large-scale, illicit drug trafficking, when the defendant was charged solely with a single sale of a relatively small quantity of narcotic. It is the settled law in Tennessee that proof which tends to show that the accused is guilty of the commission of other crimes and offenses is generally inadmissible for the purpose of proving the defendant's guilt of the specific crime charged. *McGowen v. State*, 221 Tenn. 442, 427 S.W.2d 555 (1968). Such evidence will only be admissible for the limited purpose of showing motive, guilty knowledge, intent, identity, absence of mistake, or common scheme or design.

*McGowen v. State, supra; Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963). Some of the evidence of other sales introduced at trial tended to prove the existence of a common scheme or plan and thus may be viewed as legitimately corroborative of Homer Goodwin's testimony that he was acting as an agent of Armstrong, a fact which would establish the defendant's complicity in the crime charged. But we think a great deal of the other crimes evidence went beyond this limit. *Cf. United States v. Pierce*, 491 F.2d 1253 (6th Cir. 1974). In attempting to portray Armstrong as the area's leading narcotics dealer, the State engaged in impermissible "overkill." *Manning v. Rose*, 507 F.2d 889, 895 (6th Cir. 1974) (dictum).

We hold that the trial court erred in allowing the State to present such evidence to the jury by overruling the defendant's objections to this presentation. However, in light of the overwhelming evidence supporting the jury's determination of the defendant's guilt with regard to the February 7 sale, we think that the error, as suggested in the defendant's brief, relates solely to the penalty imposed, which was the statutory maximum possible under T.C.A. § 52–1432(a)(1)(A). Certainly we are unable to say beyond a reasonable doubt that the sentence and fine assessed were not affected by the offending evidence. Accordingly, we reduce the penitentiary sentence to five years and nullify the fine imposed, thereby assessing the minimum penalty provided by statute, subject to the consent of the State. *Huffman v. State*, 200 Tenn. 487, 292 S.W.2d 738 (1956). If a new hearing on the penalty to be assessed is required, it should be consolidated for purposes of appeal with any rehearing which is necessitated under Section I of this opinion.

For the reasons set out above, the judgment of the trial court is modified as indicated and this case is remanded for further proceedings consistent with this opinion.

RUSSELL, P. J., and GALBREATH, J., concur.