**James Ronald JIMINEZ, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Feb. 1, 1979.

Certiorari Denied by Supreme Court May 7, 1979.

James R. Omer, James F. Sanders, Dale M. Quillen, Nashville, for appellant.

William M. Leech, Jr., Atty. Gen., William O. Kelly, Asst. Atty. Gen., Nashville, Harold B. McDonough, Jr., and Sterling P. Gray, Jr., Asst. Dist. Attys. Gen., Nashville, for appellee.

## OPINION

DAUGHTREY, Judge.

The defendant-appellant, James Ronald Jiminez, was convicted of selling a schedule II controlled substance (cocaine) to an undercover agent of the Tennessee Bureau of Identification. The jury assessed the maximum sentence provided under T.C.A. § 52–1432(a)(1)(B): seven to ten years imprisonment and a fine of $15,000.00. On appeal

the defendant challenges (i) the admissibility of certain evidence tending to establish his participation in other drug sales, (ii) the admissibility of the actual controlled substance in this case, (iii) the trial court's failure to allow inspection of documents under T.C.A. § 40–2446, and (iv) the allegedly excessive nature of the sentence imposed. Because the evidence establishing the defendant's guilt is clear and virtually uncontested, and because there is no reversible error in regard thereto, we affirm the conviction. However, for the reasons stated below, we find that the sentence assessed by the jury must be modified.

Proof at trial showed that Jiminez sold three-quarters of an ounce of a powdered substance, a substantial portion of which proved to be cocaine, to T.B.I. Agent Richard L. Grinalds in exchange for $950.00. This prearranged sale took place in a Nashville restaurant parking lot, where it was observed and photographed by eight other state and federal narcotics agents. According to Grinalds's testimony, the buy was merely a "sample": it was agreed between Jiminez and Grinalds that if the cocaine proved to be of acceptable quality, the agent would make regular buys from the defendant, in amounts up to a pound of cocaine a month. In order to demonstrate his purported ability to make a large buy, the agent took the defendant to his car and showed him $25,000.00 in cash, which had been supplied through state funds for this purpose.

■ The State sought to introduce into evidence the fact that the defendant was subsequently arrested in Cookeville, Tennessee, after making a second cocaine sale (apparently also to T.B.I. Agent Grinalds). The trial judge refused to permit the introduction of the details of this sale into evidence, but did allow the State to develop testimony concerning Jiminez's agreement to supply Grinalds with cocaine on a regular basis in the future. The trial judge ruled that this evidence was relevant to show motive and to establish that although the transaction involved less than an ounce of cocaine, it was nevertheless something more than a mere "casual exchange" as that term is used in T.C.A. § 52–1432(a)(2). Had the trial judge limited the testimony to proof of statements made by the defendant during the course of the offense for which he was on trial, we would have little hesitancy in upholding his ruling even though the statements evinced a stated intent to commit other crimes of a like nature in the future. In the circumstances of this case such evidence would not violate the rule prohibiting proof of other crimes in order to establish a propensity to commit the offense in question. However, the trial judge here went further, permitting the State to establish that the agent "lived up to his part of the agreement" on the ground that such proof "keeps it [the agreement] from just dangling in the air [and] gives some end to the situation." The trial court labelled this "an admissible cut-off." Thus the jury was permitted to hear the following exchange on Grinalds's direct examination:

Q: Now Mr. Grinalds, when [the defendant] left, did you all have any agreement that you would get together in the future, sir?

A: Yes, sir, as I left his vehicle, it was agreed that I should contact him . . . the following Monday, or at least, within the week, and he would let me know something.

Q: All right, and for what purpose were you all to get back in touch with each other for, sir?
[Objection by defense counsel overruled.]

A: To arrange to purchase . . . more cocaine.

Q: And how much were you arranging to buy, sir?

A: At least one pound.

Q: All right . . . and did the Defendant subsequently carry out his agreement?
[Objection by defense counsel sustained as to the form of the question: prosecutor permitted to reformulate.]

Q: Now, Mr. Grinalds, did you subsequently go through with the agreement that you had with the Defendant?

A: Yes, sir, I did.

 We conclude that in permitting the question to be rephrased, the trial court honored form over substance. The only fair inference that the jury could draw from this testimony is that the defendant subsequently made an unknown number of large sales of cocaine to Grinalds. This evidence was plainly and improperly prejudicial, and, unfortunately, may well have left the inaccurate impression with the jury that subsequent sales occurred over a longer period of time than actual proof would have indicated. While we find that the proof of Jiminez's guilt was so overwhelming that the error committed with regard to Grinalds's testimony could not have affected the jury's verdict on that issue, we are unable to say that the improper testimony did not affect the punishment assessed.

The evidence clearly violates the prohibition against "other crimes" evidence, and it cannot be excused as an exception to the general rule because it was not necessary to establish identity or any of the necessary elements of the crime. *Collard v. State,* 526 S.W.2d 112 (Tenn.1975); *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523, 529 (1963). Whatever the probative value of this evidence, in terms of "not leaving the jury dangling," the probative value is plainly outweighed by its prejudicial effect. The maximum sentence may reflect an attempt by the jury to punish the defendant for a surmised course of dealing, rather than for the single offense with which he was charged. Such a sentence would, of course, be illegal. *Armstrong v. State,* 555 S.W.2d 870, 875 (Tenn.Cr.App.1977). However, the error here may be corrected by modification of the punishment to the minimum sentence provided by law, subject to the State's consent. *Depue v. State,* 532 S.W.2d 937 (Tenn.Cr.App.1975), relying on *Huffman v. State,* 200 Tenn. 487, 292 S.W.2d 738 (1956). See also *Armstrong v. State, supra.* Should the State desire a retrial on the issue of punishment, the case must then be remanded for a hearing on that question alone. *Huffman v. State, supra.*

We find no other error in the record. The chain of custody of the packet of cocaine bought by Agent Grinalds from the defendant was sufficiently established to permit its introduction into evidence. The trial court correctly ruled that the agent's case report was work product and was therefore not subject to inspection under T.C.A. § 40–2446, a statute of constitutionally doubtful efficacy at the time of this trial. See *Crawford v. State,* Court of Criminal Appeals at Knoxville, May 3, 1977; affirmed by the Tennessee Supreme Court (per curiam), May 22, 1978. The specific question raised by the defendant concerning the excessive nature of the sentence is rendered moot by the ruling set out above. The remaining assignments of error are therefore overruled.

The judgment is modified to reflect as punishment a sentence of not more nor less than four years imprisonment, subject to the State's approval. In all other respects, the judgment is affirmed.

WALKER, J., and SAM L. LEWIS, Special Judge, concur.