# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 19, 2010

## STATE OF TENNESSEE v. ANTHONY EUGENE YOUNG

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-D-3214      Cheryl Blackburn, Judge**

---

**No. M2009-00674-CCA-R3-CD - Filed September 17, 2010**

---

A Davidson County jury convicted the Defendant of one count of burglary, and the trial court sentenced him to twelve years as a career offender. On appeal, the Defendant argues: (1) the trial court erred when it admitted testimony about items in the Defendant's possession when he was arrested; (2) the record contains insufficient evidence to support his conviction; and (3) the trial court erred when it denied his request for Community Corrections. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J.,delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Emma Rae Tennent (on appeal), Nashville, Tennessee; J. Michael Engle (at trial), Nashville, Tennessee, for the Appellant, Anthony Eugene Young.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Matthew Bryant Haskell, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Jeff Burks, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant burglarizing the Federal Public Defender's Office in Nashville, Tennessee. At the time of the Defendant's arrest, he was found in possession

of deli meat, which police later determined was stolen from a local restaurant. Based on these events, a Davidson County grand jury indicted the Defendant for two counts of burglary, one count for the burglary of the Federal Public Defender's Office and the other count for the burglary of the local restaurant. The two counts were severed, and the Defendant first proceeded to trial on the charge of burglary of the Federal Public Defender's Office. Before the trial on this charge, the trial court ruled that the State's witnesses should refrain from mentioning that the deli meat found in the Defendant's possession at the time of his arrest was returned to its owner.

The following evidence was presented at the Defendant's trial: Henry Martin, the Federal Public Defender for the Middle District of Tennessee, testified that the Federal Public Defender's Office, which had regular office hours from 8:30 a.m. to 5:30 p.m., was located at 810 Broadway, in Nashville, and occupied one and a half floors of the building. On August 15, 2007, no one other than office staff had permission to enter the office before 8:00 a.m.

Michael Beem, an assistant computer systems administrator for the Federal Public Defender's Office, testified that he generally arrived at work between 7:00 a.m. and 7:15 a.m. and that he worked in the office that housed computer equipment. Beem testified that he had not given anyone permission to enter the office on the morning of August 15. A little before 8:00 a.m. on August 15, Beem recalled that he heard metal creaking, "like when you put together a metal rack and you slide it across the floor." Beem's office was next door to the storage unit, so he exited his office to see whether someone needed help. After exiting his office, Beem saw the Defendant, who was wearing a white shirt with a red horizontal stripe and black pants, walk through the office back door, which was always locked, and into the office area. Beem said the Defendant was looking down at an old postage meter that was on the floor and had a large screwdriver in his left hand and a black bag with white stitching in his right hand. When Beem spoke to the Defendant, the Defendant looked up and fled out the backdoor. Beem followed the Defendant, who fled down a ramp at the back of the building and away from the building toward Eighth Avenue. Beem, unable to catch the Defendant, contacted the police and described the event and the Defendant to the police. When police officers arrived, they discovered that the metal frame of the back door had been bent and damaged.

Beem testified that approximately forty-five minutes after he saw the intruder flee the building, police transported him to a location three blocks away where they had detained an individual matching his description of the intruder. Beem positively identified the Defendant as the individual who had broken into the Federal Public Defender's Office that morning. Beem said that the Defendant was wearing the same shirt and hat but that his pants appeared to be different. The Defendant was carrying the same bag, but the screwdriver was not as

2

long or big as Beem remembered.

Two Metropolitan Nashville police officers, Steve Haines and Buddy Mitchell, responded to the Federal Public Defender's Office after the burglary in this case. The officers took the initial report and a detailed description from Beem. Sergeant Mitchell testified at trial that he then left to survey the surrounding area for the Defendant. Officer Haines remained at the scene and noted pry marks on the rear door and door jam. Approximately three blocks from the Public Defender's Office, Sergeant Mitchell observed the Defendant, who matched Beem's description and appeared "nervous." Officer Haines transported Beem to the area where the Defendant had been detained, and Beem positively identified the Defendant. The officers found two cloth bags in the Defendant's possession, one of which contained six large packages of deli meat and a screwdriver. At trial, Officer Mitchell testified that he returned the deli meat to its owner. The Defendant objected to this testimony and the trial court sustained the objection. The trial court offered to issue a curative instruction and the Defendant rejected this offer.

Based upon these facts, the jury convicted the Defendant of burglary. Subsequently, a sentencing hearing was held where the following evidence was presented: The State offered into evidence eight certified copies of the Defendant's prior felony convictions, which established the Defendant as a career offender, and a presentence report.

The Defendant testified that he wanted the trial court to sentence him to Community Corrections and proposed two alternatives for the trial to consider if it ordered a sentence of Community Corrections. First, he could enter a residential program called The Academy, or, second, he could live with and care for his mother who suffered from a chronic illness. The Defendant stated that he was aware of and felt he could comply with the requirements of Community Corrections. As part of his community-based sentence, the Defendant requested that Narcotics Anonymous and Alcoholics Anonymous be part of his treatment because he had benefitted from those programs while incarcerated. The Defendant testified that he successfully graduated from the Lifelines program during his incarceration. The Defendant acknowledged that he did not have a driver's license but said his daughter could provide him transportation, or he could ride the bus from his mother's apartment, which was near a bus stop.

The Defendant testified about recent events in his life that triggered his drug use. The Defendant's stepson died, the Defendant's father died, and the Defendant was diagnosed with HIV. The Defendant testified that, although he had experienced difficulties, he had experienced "quite a few miracles" as well, such as a supportive family, support through the Alcoholics Anonymous program, spiritual growth, and an awareness of his addiction through participation in Drug Court.

3

On cross-examination, the Defendant agreed that he had attended Lifelines twice because he did not graduate the first time. He also acknowledged that he had been terminated from Drug Court twice previously.

James Wheeler, assistant program director at The Academy, testified that the program was a two-year, very structured residential program with the resident's days scheduled from 6:00 a.m. to 11:00 p.m, seven days a week. Residents were expected to work six days a week within the program, and the program provided all of the residents' necessities. The residents worked in The Academy's landscaping business, moving company, or construction crew.

Wheeler testified that the program would accept a resident who was on Community Corrections but that they could not transport the resident to Community Corrections classes in Bordeaux. Wheeler said that The Academy did not focus treatment on substance abuse or addiction, as it viewed addiction as a symptom rather than the main problem. The program goal is to address a resident's decision-making process through discipline and rules. Wheeler testified that the Defendant was a suitable candidate for The Academy and would be accepted as a resident should the trial court agree to the Defendant's participation in the program as part of his sentence. Wheeler said that, at that time, one of the program's residents was serving a sentence of Community Corrections but that resident was not required to attend the classes in Bordeaux.

At the conclusion of the hearing, the trial court denied the Defendant's request for Community Corrections and sentenced him to twelve years in the Department of Correction. It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant argues: (1) the trial court erred when it admitted testimony about items in the Defendant's possession when he was arrested ; (2) the record contains insufficient evidence to support his conviction; and (3) the trial court erred when it denied his request for Community Corrections.

### A. Admission of Evidence

The Defendant contends that the trial court erroneously allowed testimony regarding the return of deli meats in his possession to the owner. The State responds that the trial court acted properly in sustaining the Defendant's objection to the testimony and offering to issue a curative instruction.

When the Defendant was apprehended for the burglary of the Federal Public

4

Defender's Office, he was carrying a bag that contained six large packages of frozen deli meat. After determining these rolls of meat had been stolen from a nearby restaurant, police returned the meat to the restaurant. The Defendant moved to exclude evidence of his possession of the deli meat from the jury, pursuant to Tennessee Rule of Evidence 404(b) and the trial court limited any trial testimony about the deli meat to testimony that the Defendant was in possession of it. This ruling precluded the officers from testifying that the meat was stolen or later returned by the officers to the owner. During the trial, the Defendant objected to testimony from a State witness, who testified that the witness had returned the meat to the owner. The trial court sustained the objection and offered to issue a curative instruction, but the Defendant rejected this remedy, explaining that such an instruction would draw attention to the comment. The Defendant argues that the trial court erred in allowing this testimony.

Rule 404(b) of the Tennessee Rules of Evidence states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes." The trial court may admit the evidence for non-character purposes if four conditions are met:

> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
>
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
>
> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). If a trial court "substantially complies" with these requirements, this court will review for an abuse of discretion. *State v. McCary*, 119 S.W.2d 226, 244 (Tenn. Crim. App. 2003) (*citing State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997)). If the evidence sought to be admitted is relevant to an issue other than the accused's character, such as identity, motive, common scheme, intent, or rebuttal of accident or mistake, it may be admitted for that purpose so long as the danger of unfair prejudice does not outweigh the probative value. Tenn. R. Evid. 404(b), Advisory Comm'n Cmts.; *McCary*, 119 S.W.2d at 243.

This Court has previously stated that, in instances where a witness testifies to

improper content, a prompt instruction to a jury directing it not to consider improper evidence generally cures any error, *State v. Tyler*, 598 S.W.2d 798, 801(Tenn. Crim. App. 1980); (*citing Williams v. State*, 218 Tenn. 359, 403 S.W.2d 319 (1966); *Armstrong v. State*, 555 S.W.2d 870 (Tenn. Crim. App. 1977), cert. denied 435 U.S. 904); unless such evidence is so far prejudicial that it was more probable that it affected the judgment than not. Tenn. R. App. P. 36(b).

In the case under submission, the State's witness improperly testified that the deli meat found in the Defendant's possession was returned to its owner, in direct contravention of the trial court's order. The Defendant made a timely objection, which the trial court sustained and then offered to provide the jury a curative instruction. The Defendant rejected this remedy, explaining he did not want to draw more attention to the improper testimony. As discussed above, a curative instruction generally cures any error "caused by the admission of improper evidence." *See Tyler*, 598 S.W.2d at 801. We do not fault this strategic decision by the Defendant, but we also cannot grant him the relief he now seeks. *See* Tenn. R. App. P. 36(a). Further, the Defendant failed to request a mistrial based upon the State's witness's testimony. We conclude that the Defendant is not entitled to relief on this issue.

## B. Sufficiency of the Evidence

The Defendant contends the evidence is insufficient to sustain his burglary conviction because there was insufficient evidence of his intent to commit theft. When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (*citing State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App.1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State*

*v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (*citing Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (*citing State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

In this case, the Defendant was convicted of a burglary for the break-in of the Federal Public Defender's Office in Nashville. The elements of burglary are as follows: (1) the Defendant entered a building other than a habitation not open to the public; (2) the Defendant entered the building with the intent to commit, or committed, or attempted to commit a theft; (3) the Defendant acted without the effective consent of the Federal Public Defender or authorized employee; and (4) the Defendant acted either intentionally, knowingly, or recklessly. *See* T.C.A. § 39-14-402(a)(1), (3) (1997); T.P.I.-Crim. 14.01.

The evidence at trial, viewed in the light most favorable to the State, proved that the Defendant, without authority to do so, forcibly entered a locked back door of the Federal Public Defender's Office before public office hours, damaging the door frame through his forcible entry. The Defendant had with him a duffle bag and screwdriver when an employee stepped into the hallway and saw the Defendant surveying a postal meter. When the employee addressed the Defendant, the Defendant fled the building. The Defendant was apprehended close by looking "nervous" and still carrying the duffle bag and a screwdriver.

The Defendant's argument focuses on the sufficiency of the evidence to support the second element of burglary, the intent to commit theft. The specific intent required for the offense of burglary may be established by circumstantial evidence. *See Bollin v. State*, 486 S.W.2d 293, 296 (Tenn. Crim. App. 1972). This Court has maintained that "[i]n the absence of an 'acceptable excuse,' a jury may reasonably and legitimately infer that by breaking and

entering a building containing valuable property, a defendant intends to commit theft." *State v. Ingram*, 986 S.W.2d 598, 600 (Tenn. Crim. App. 1998) (*quoting Hall v. State*, 490 S.W.2d 495, 496 (Tenn. 1973)); *State v. Chrisman*, 885 S.W.2d 834, 838 (Tenn. Crim. App. 1994); *State v. Avery*, 818 S.W.2d 365, 367-68 (Tenn. Crim. App. 1991); *State v. Burkley*, 804 S.W.2d 458, 460 (Tenn. Crim. App. 1990).

Here, the record contains evidence that the Defendant, before office hours, used a screwdriver to enter the offices through a locked, rear door without an "acceptable excuse." He entered the offices, which contained valuable items. *See Hall*, 490 S.W.2d at 496. We do not think it unreasonable for a jury to infer that a person with legitimate business in the Federal Public Defender's Office would not enter before public office hours, through a locked rear door that they opened forcibly with a screwdriver. Thus, we conclude that the jury could have reasonably and properly inferred from this evidence that the Defendant intended to commit theft. The Defendant is not entitled to relief on this issue.

## C. Sentencing

The Defendant contends the trial court erred when it denied him an alternative sentence, in the form of Community Corrections, arguing that his amenability to rehabilitation justifies an alternative sentence and that a sentence of total confinement was "unwarranted and unnecessary." The State responds that the record fully supports the trial court's denial of alternative sentencing based upon the Defendant's criminal history as well as his past failures to comply with measures less restrictive than confinement.

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2006); *State v. Mencer*, 798 S.W.2d 543, 549 (Tenn. Crim. App. 1990). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts. This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result was preferred. T.C.A. § 40-35-103 (2006); *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001).

Due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (*citing* T.C.A. § 40-35-102(6) (2006)). Instead, a defendant not within "the parameters

of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id*. (footnote omitted); T.C.A. § 40-35-102(6); 2007 Tenn. Pub. Acts 512. Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. T.C.A. § 40-35-102(6).

When sentencing the defendant to confinement, a trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(A)-(C). In choosing among possible sentencing alternatives, the trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment." T.C.A. § 40-35-103(5); *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. *See State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *see also State v. Bunch*, 646 S.W.2d 158, 160-61 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *Dowdy*, 894 S.W.2d at 305-06.

In this case, the trial court sentenced the Defendant to twelve years, and it denied the Defendant's request for an alternative sentence, ordering the Defendant to serve his entire sentence in confinement. The trial court listed the statutory factors and sentencing principles it considered that led to its denial of alternative sentencing. The trial court, noting both the Defendant's eight prior felony convictions and his unsuccessful attempts in Drug Court and Lifelines, stated that it would still consider "some very strict program" under Community Corrections, but emphasized the need for the Defendant to be supervised. The trial court then went on to discuss each of the forms of an alternative sentence the Defendant proposed under Community Corrections: (1) The Defendant's mother's home; or (2) The Academy residential program. Based upon the Defendant's past failures, the trial court reasoned that sending the Defendant back into his mother's home where he previously lived would, once again, prove unsuccessful. As to the other option, The Academy program, the trial court

9

concluded it likewise was untenable because, under it, the Defendant could not fully comply with the requirements of Community Corrections supervision. In conclusion the trial court stated:

> So, Mr. Young, . . . you have such a long history – we have tried so many times with you. I really don't feel like I have – and I have considered the alternatives, and I have decided they're not sufficient in the case to protect society from your behavior.

The record does not preponderate against the trial court's findings. The Defendant is a career offender, and his present conviction for burglary is a Class D felony. The Defendant's criminal record includes twenty-three misdemeanors and eight felonies. The Defendant testified as to his failed attempts at Drug Court and Lifelines and admitted to illicit drug use. Further, the presentence report indicates multiple failed attempts at previous probated sentences. Thus, the record adequately supports the trial court's findings. We conclude that, in ordering confinement, the trial court considered the pertinent facts of this case and the sentencing principles of Tennessee Code Annotated section 40-35-103 (A)-(C). As such, its denial of alternative sentencing is presumptively correct. *See* T.C.A. § 40-35-401(d); *Mencer*, 798 S.W.2d at 549. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Based upon the aforementioned reasoning and authorities, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE